[No. B186504. Second Dist., Div. Three. Jan. 18, 2008.]

JAVIER F. OVANDO, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

JAVIER F. OVANDO, Plaintiff and Appellant, v.
TAMAR TOISTER et al., Defendants and Appellants.

44

COUNSEL

Moreno, Becerra & Casillas, Gregory W. Moreno, Danilo J. Becerra; Norris & Galanter, Douglas F. Galanter and Donald G. Norris for Plaintiff and Appellant.

Pollak, Vida & Fisher and Daniel P. Barer for Defendants and Appellants.

OPINION

**CROSKEY, J.**—Javier F. Ovando appeals an order granting a new trial after the jury awarded him $6.5 million in damages against his former defense attorney, Tamar Toister, and her employer, the County of Los Angeles, for

legal malpractice resulting in his false conviction. The trial court concluded that a juror had committed prejudicial misconduct by failing to disclose her knowledge of facts concerning a police corruption scandal involving officers from the Los Angeles Police Department's Rampart Division, and that the jury's apportionment of zero percent fault to rogue former police officers Rafael Perez and Nino Durden was against the weight of the evidence. Ovando contends the evidence does not support the conclusion that the juror committed misconduct or that the misconduct was prejudicial, and contends fault cannot be apportioned to Perez and Durden as a matter of law.

The county and Toister appeal the judgment and challenge the denial of their summary judgment motion and a prior order granting Ovando relief from the claim presentation requirement on the ground that his claim was timely. They contend Ovando's legal malpractice cause of action accrued on the date of his sentencing in March 1997 at the latest, his claim presented to the county was untimely, his petition for relief from the claim presentation requirement was untimely, the denial of their summary judgment motion brought on those grounds was error, and Ovando's complaint is barred by the statute of limitations.

We conclude that (1) the court properly ordered a new trial on the ground of juror misconduct; (2) defendants have not established as a matter of law that Ovando's legal malpractice cause of action accrued by March 1997 and are not entitled to summary judgment on that basis; (3) the order granting Ovando's petition for relief from the claim presentation requirement on the ground that his claim presented to the county was timely was error, and Ovando must plead and prove compliance with the claim presentation requirement or show an excuse for noncompliance to establish defendants' liability; (4) Civil Code section 1431.2 requires the apportionment of fault among all tortfeasors, including Perez and Durden, notwithstanding any immunity under Government Code section 821.6; and (5) Civil Code section 1431.2 requires the apportionment of fault in a legal malpractice cause of action seeking primarily noneconomic damages for personal injury. Accordingly, we will affirm the order granting a new trial and dismiss the appeal from the judgment as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Officers Perez and Durden were assigned to set up an observation post in an apartment building to observe criminal activity. The officers jumped over a fence and entered through the back door. The building was in serious disrepair, and most of the first floor windows were boarded up. The officers

performed a cursory search of the building and encountered Ovando, his girlfriend Monique Valenzuela, and a friend known as "Blackie" in a room in the building. The officers searched the occupants and the room, handcuffed Ovando, took him to another room, and then released him.

The next evening, on October 12, 1996, the officers encountered Ovando in the building a second time together with a friend known as "Nene." They handcuffed Ovando and Nene, and then released Nene and told him to leave. After Nene had left, the officers took Ovando to another room. They shot Ovando in the chest, hip, and head. Ovando survived the shooting but suffered serious injuries and permanent paralysis in his legs. The precise circumstances of the shooting are disputed, but there is no dispute that Ovando was unarmed and that the two officers planted a weapon and presented a false story to cover up the actual facts.

Ovando was charged with two counts of assault on a police officer (Pen. Code, § 245, subd. (d)(2)) and one count of brandishing a firearm in a peace officer's presence (*id.*, § 417, subd. (c)). Toister, a deputy public defender, was assigned to defend Ovando. Officers Perez and Durden testified falsely at trial that Ovando had burst open the door to an apartment carrying a semiautomatic rifle, entered the apartment, and pointed the weapon at Durden before the officers shot him. Ovando did not testify in his own defense, and his attorney presented no witnesses at trial. The jury convicted Ovando on one count each of assault on a police officer (*id.*, § 245, subd. (d)(2)), assault on a person with a semiautomatic firearm (*id.*, § 245, subd. (b)), and brandishing a firearm in the presence of a peace officer (*id.*, § 417, subd. (c)), all felonies. On March 7, 1997, he was sentenced to 23 years four months in prison.

Officer Perez, a cocaine dealer, was arrested in August 1998 for removing cocaine from a police evidence room under someone else's name. In a plea bargain, he agreed to disclose evidence of wrongdoing within the police department. In September 1999, he revealed his own wrongdoing and that of his partner Durden in connection with Ovando's shooting.[1] The district attorney filed a petition for writ of habeas corpus, and the trial court granted the petition and vacated Ovando's convictions on September 16, 1999.

---

[1] Numerous police officers were implicated in a pattern of egregious misconduct involving framing of suspects, planting of evidence, commission of perjury to obtain convictions, and unauthorized use of force. The events became known as the Rampart scandal. More than 100 convictions were overturned as a result. (See generally Gross et al., *Exonerations in the United States 1989 Through 2003* (2005) 95 J. Crim. L. & Criminology 523, 533–534; Chemerinsky, *An Independent Analysis of the Los Angeles Police Department's Board of Inquiry Report on the Rampart Scandal* (2001) 34 Loyola L.A. L.Rev. 545, 547, 549.)

Ovando sued the City of Los Angeles, Perez, and Durden, and other police officers and police department officials in October 1999, alleging civil rights violations. Ovando eventually received a $15 million settlement.

### 2. *Application to Present a Late Claim and Petition for Relief from the Claim Presentation Requirement*

Ovando applied to the county on October 12, 1999, for leave to present a late government claim (Gov. Code, § 911.4) arising from his medical treatment in a county hospital, the investigation of the charges against him, his prosecution, and his defense. A proposed claim was attached to the application, pursuant to Government Code section 911.4, subdivision (b). The proposed claim stated that the acts and omissions on which the claim was based occurred after the shooting of October 12, 1996, but the application stated that the causes of action accrued on the day of the shooting. The application stated that Ovando was physically and mentally incapacitated by the shooting, "was unable to reach or meaningfully communicate with an attorney" during his incarceration, and therefore "was unable to learn of the requirements of the six-month claim filing requirement, and . . . unable to communicate with an attorney as to the viability of any of his claims and thereby learn of the filing requirements." The county denied the application in November 1999, stating that it was not presented within one year after the causes of action had accrued as required by Government Code section 911.4.

Ovando petitioned the trial court for relief from the claim presentation requirement (Gov. Code, § 946.6) in May 2000 (Super. Ct. L.A. County, No. BS063013). He argued that it was impossible or impracticable for him to present a timely claim due to his mental and physical incapacity and imprisonment, and that his causes of action did not accrue until his conviction was overturned. Ovando stated that he did not discover and had no reason to discover the alleged legal malpractice until after he was released from prison in September 1999. He also argued that the time to present the claim was tolled by Toister's continuing representation of him with respect to the writ of habeas corpus.

The court stated at the hearing that Ovando had failed to establish a mental or physical incapacity sufficient to toll the time for presentation of the claim and that there was no evidence of continuous representation. The court stated further, however, that actual innocence was an essential element of Ovando's cause of action for legal malpractice, citing *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983]. The court concluded that until his convictions were set aside, Ovando could not establish all of the elements of his cause of action, that the cause of action did not accrue until that time, and that the claim therefore was timely as to

the causes of action for legal malpractice and malicious prosecution. The court entered an order on September 1, 2000, granting the petition as to the causes of action for legal malpractice and malicious prosecution, and denying the petition as to the medical malpractice cause of action. Ovando filed a request for dismissal of the petition for relief from the claim presentation requirement in November 2000, and the clerk entered the dismissal.

3. *Complaint, Summary Judgment Motion, and Reconsideration of the Order Granting the Petition for Relief from the Claim Presentation Requirement*

Ovando filed a complaint against the county and Toister on September 22, 2000, alleging a single count for legal malpractice (Super. Ct. L.A. County, No. BC237276). He alleges that Toister failed to adequately investigate the facts and circumstances of his alleged crimes, failed to adequately investigate the backgrounds of Officers Perez and Durden, and failed to undertake reasonable measures to locate and present the testimony at trial of percipient witnesses who could have exonerated Ovando. He alleges that the court granted his petition for relief from the claim presentation requirement and does not allege that he complied with the claim presentation requirement.

Defendants moved for summary judgment in November 2002, arguing that Ovando's application to the county to present a late claim was untimely and that the order granting relief from the claim presentation requirement should be set aside and judgment entered for defendants. Defendants argued that the cause of action accrued when Ovando first suspected wrongdoing by his defense attorney, that Ovando suspected wrongdoing during his criminal trial, that he suffered actual injury upon his sentencing, and that he failed to establish a basis for tolling. The court concluded that it could not modify or set aside the order by another judge granting relief from the claim presentation requirement, suggested that Ovando seek relief from the judge in No. BS063013, and denied summary judgment. The county and Toister challenged the denial by petitioning this court for a writ of mandate. We summarily denied the petition in April 2003 (*Toister v. Superior Court* (Apr. 23, 2003, B166380)).

In May 2003, the county and Toister filed an ex parte application in No. BS063013 to vacate the voluntary dismissal of Ovando's petition for relief from the claim presentation requirement. The court concluded that its order of September 1, 2000, granting the petition in part and denying it in part fully disposed of the petition and that Ovando's subsequent voluntary dismissal had no effect, and therefore denied the application. The court stated, however, that defendants could move for reconsideration of the prior order in any event. The county and Toister filed a motion for reconsideration of the

prior order on the petition in June 2003. On July 14, 2003, the court granted reconsideration and then reaffirmed its prior ruling. The court stated, "The court is persuaded that its original decision was correct at the time and should not be reversed at this point."

### 4. *Motion to Bifurcate and Dismissal of Affirmative Defenses*

The county and Toister filed a motion in April 2003, before the date then set for trial, to bifurcate their statute of limitations affirmative defense and try the issue first. After several trial continuances, the court heard the motion in April 2005. Defendants argued that the order granting relief from the claim presentation requirement on the ground that the claim presented to the county was timely was error, and that the ruling was based on a question of law rather than fact. Defendants sought to preserve that error for appeal without trying the statute of limitations defense to a jury. Defendants suggested that Ovando move to dismiss their affirmative defenses based on the statute of limitations and failure to comply with the claim presentation requirement. Ovando orally moved to dismiss the affirmative defenses. Defendants stated "for the record" that they opposed the motion, but did not argue in opposition.

The court stated that if defendants opposed the motion they should state the grounds for their opposition. Defendants and Ovando then both suggested that the court should defer to the order granting the petition for relief from the claim presentation requirement, and that the court could not overturn the prior ruling by another judge. The court granted the motion on that basis and dismissed the defenses.

### 5. *Trial, Verdict and Judgment*

The trial on the complaint in the legal malpractice action (No. BS063013) began in April 2005. During jury voir dire, the court described to the jury the events that gave rise to Ovando's injuries and identified Officers Perez and Durden. After questioning the potential jurors, the court stated at the end of the day: "While we're on this subject, let me just ask those of you who actually have—without indicating what it was, I just want to ask of the 22 of you here how many of you have read or heard about Officers Perez or Durden or the Rampart scandal?" Some of the potential jurors raised their hands in response to this question, including Jennifer Salinas. The court then stated: "So let me do it the other way. How many of you have not heard about it?" Salinas raised her hand in response to this question as well.

The next morning, the court stated: "I'm going to ask that jurors who have indicated that they know things about the Rampart issues to come forward

and talk to me about that." The court then identified and questioned several potential jurors on the subject, but did not question Salinas.

After more than three weeks of testimony, counsel delivered their closing arguments and the court instructed the jury. Ovando sought only noneconomic damages for emotional distress and physical pain. The jury returned a special verdict finding that Toister was negligent and that Ovando had suffered $6.5 million in damages as a result of his conviction and imprisonment. The jurors voted nine to three that Toister was negligent. The jury apportioned 100 percent of the fault for Ovando's conviction and imprisonment to Toister, zero percent to Perez, and zero percent to Durden. The court entered a judgment on June 3, 2005, awarding Ovando $6.5 million in damages against both the county and Toister.

### 6. *Postjudgment Motions*

The county and Toister moved for a new trial based on the grounds of juror misconduct, excessive damages, and insufficiency of the evidence to support the jury's apportionment of damages, among other grounds. They also moved for judgment notwithstanding the verdict. They argued, among other things, that Juror Salinas had concealed her knowledge of the Rampart scandal during voir dire. They filed a declaration stating that Salinas had played a prominent role in a movie (Gang Warz (Pittsburgh Pictures 2004)) that depicted a rogue police officer in the Rampart Division, apparently patterned after Officer Perez, whose perjured testimony had resulted in the conviction of a gang leader. The declaration stated that the movie began with a text scroll stating: " 'On Sunday March 12, 2000, the LAPD disbanded it's [*sic*] then legendary Anti-Gang C.R.A.S.H. Units. (Community Resources Against Street Hoodlums) [¶] The Crash [*sic*] Units were dissolved after more than twenty years in the wake of the Rampart Scandal, the worst police corruption in Los Angeles history. [¶] The scandal led to the investigation of more than 70 current and former LAPD officers and overturned an equal number of convictions. [¶] Dozens of hard-core felons and gang members were released and in some cases paid millions of dollars due to tainted testimony from Rampart Officers. [¶] As convicted gang leaders moved back into society, gang crime increased at an unprecedented rate, with few experienced anti-gang officers to combat them. [¶] Since the C.R.A.S.H. Unit's [*sic*] demise, LA Gang membership rose to well over 100,000. And Los Angeles quickly became the Murder Capital of the United States.' "

Toister and the county argued that Salinas had failed to disclose her knowledge of the Rampart scandal in response to a direct question during voir dire and thwarted counsel's efforts to disclose actual or potential bias.

Ovando filed declarations by Salinas and other jurors in opposition to the new trial motion. Salinas declared that she had answered the voir dire questions truthfully, that she had no particular knowledge of the Rampart scandal before the trial began, that her experience as an actor in Gang Warz and her viewing of the movie provided her no "special knowledge of, or familiarity with, the Rampart Scandal," and that she was not biased. She declared that she raised her hand in response to the court's initial question whether any of the potential jurors had read or heard about the Rampart scandal, "because I had hear the term 'Rampart' before. But when the Court asked the question the second time in the converse, I reflected and realized that although I had heard of the term 'Rampart' before, I really did not know anything regarding the particulars of the 'Rampart Scandal' and had never heard of Officers Perez or Durden before, so I raised my hand." Salinas declared that she had seen the movie at two screenings, and that she did not remember until after the trial that the movie "had briefly mentioned 'Rampart' in the beginning of the movie," but still believed that her response to the voir dire question was truthful at the time she gave it.

The court concluded that the voir dire questions were unambiguous, that Salinas had failed to respond truthfully, that "Juror Salinas had substantial knowledge of the Rampart scandal," and that she intentionally concealed that knowledge. The court stated further: "Even if taken at face value, Juror Salinas's own admissions demonstrate she chose not to come forward with the information she did know about the Rampart scandal because she thought it was trivial or unimportant. Unfortunately, that decision was not for her to make. [¶] Further, it strains credulity to believe that after her leading role in the movie 'Gang Warz' Juror Salinas had only 'heard of the term "Rampart" before' . . . . It is difficult to imagine how a movie could be more closely related to the Rampart scandal unless it was a documentary. Before this trial, Juror Salinas watched the movie twice. And, to fulfill her role as an actress in the movie, Salinas had to have read and been familiar with the entire script. Even if the script did not contain the opening comments, it is apparent Juror Salinas had substantial knowledge about the Rampart scandal."

The court stated that its conclusion that Salinas had committed misconduct was corroborated by declarations by other jurors stating, among other things, that " 'Juror Salinas was also very familiar with the Rampart scandal and talked about it in detail. She seemed to know more about it than any of the other jurors. She discussed aspects of it that were not in evidence in the trial, but that she got from some other source . . . .' "

The court concluded that the misconduct was prejudicial because Salinas's failure to disclose her knowledge of the Rampart scandal created an inference that she harbored a concealed bias, and because her failure to answer

truthfully frustrated counsel's efforts to reveal any actual or potential bias and to excuse her either for cause or by using a peremptory challenge.

The court also concluded that the jury's apportionment of 100 percent fault to Toister and no fault to Perez and Durden was against the weight of the evidence. The court stated that the officers' planting of evidence and false testimony was a substantial factor in causing Ovando's conviction. The court rejected Ovando's argument that fault could not be apportioned to Perez and Durden because they merely created the opportunity for Toister to commit legal malpractice, stating that Proposition 51[2] applies to an action for legal malpractice seeking damages for personal injury, i.e., emotional distress. The court also rejected Ovando's argument that fault could not be apportioned to Perez and Durden because they were immune from liability under Government Code section 821.6, stating that any immunity is irrelevant to the apportionment of fault under Civil Code section 1431.2.

The court therefore granted the new trial motion on the grounds of juror misconduct and insufficiency of the evidence to support the verdict as to apportionment of fault. The court denied the motion for judgment notwithstanding the verdict.

### 7. *Appeals*

Ovando appealed the order granting the new trial motion. The county and Toister then appealed the judgment and the order denying their motion for judgment notwithstanding the verdict.

## CONTENTIONS

Ovando contends (1) the evidence does not support the conclusion that Juror Salinas committed misconduct or that the misconduct was prejudicial; (2) Proposition 51 does not require the apportionment of fault to Perez and Durden because they are immune from liability pursuant to Government Code section 821.6 and because damages for legal malpractice are not subject to apportionment as a matter of law; (3) the county and Toister forfeited their defenses based on the alleged untimeliness of Ovando's claim and the statute of limitations by engineering the dismissal of those defenses and arguing that the ruling on the petition for relief from the claim presentation requirement was law of the case in an attempt to avoid an adverse jury verdict concerning the date of accrual, and they should be barred by judicial estoppel from challenging the denial of their summary judgment motion; (4) the denial of

---

[2] Proposition 51 was an initiative measure adopted by the voters in 1986 that amended Civil Code section 1431 and added sections 1431.1 through 1431.5.

defendants' summary judgment motion did not prevent them from presenting their defenses at trial, so they suffered no substantial prejudice as a result of the ruling and are not entitled to reversal of the ruling; (5) triable issues of material fact concerning the date of accrual precluded summary judgment; (6) the court ruling on Ovando's petition for relief from the claim presentation requirement had no authority to decide that his claim was timely, so the order granting the petition did not substantially affect the parties' rights and therefore is not reviewable on appeal; and (7) the governing law at the time of the ruling on the petition for relief from the claim presentation requirement compelled the conclusion that Ovando's legal malpractice cause of action did not accrue until he was exonerated, and although *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 [108 Cal.Rptr.2d 471, 25 P.3d 670] (*Coscia*) may have changed the law, *Coscia* should not be applied retroactively.

The county and Toister contend (1) the granting of a new trial on the grounds of juror misconduct and insufficiency of the evidence to support the jury's apportionment of fault was proper; (2) Ovando's legal malpractice cause of action accrued on the date of his sentencing in March 1997 because at that time he knew the facts concerning Toister's failure to introduce evidence and her other allegedly wrongful acts and omissions and had sustained actual injury, so his claim presented to the county in October 1999 and his application for leave to present a late claim were untimely; (3) the court had no jurisdiction to grant Ovando relief from the claim presentation requirement on the ground that his claim was timely; and (4) Ovando's complaint was barred by the statute of limitations, and defendants were entitled to summary judgment on that basis and on the basis of failure to comply with the claim presentation requirement.[3]

## DISCUSSION

### 1. *Juror Misconduct in Connection with Voir Dire*

A verdict may be vacated, in whole or in part, on a motion for a new trial because of juror misconduct that materially affected the substantial rights of a party. (Code Civ. Proc., § 657, subd. 2.) A party moving for a new trial on the ground of juror misconduct must establish both that misconduct occurred and that the misconduct was prejudicial. (*Ibid.*; *People v. Duran* (1996) 50 Cal.App.4th 103, 113 [57 Cal.Rptr.2d 635].) One form of juror misconduct is a juror's concealment of relevant facts or giving of false answers during a voir dire examination. (*In re Hamilton* (1999) 20 Cal.4th

---

[3] The county and Toister do not argue on appeal that the denial of their motion for judgment notwithstanding the verdict was error, and therefore abandon their challenge to the order denying their motion. (*Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 265 [107 Cal.Rptr. 175, 507 P.2d 1383].) Accordingly, we will dismiss the appeal from that order.

273, 295 [84 Cal.Rptr.2d 403, 975 P.2d 600]; *Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132] (*Weathers*).)

■ " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' [Citations.]" (*Weathers, supra,* 5 Cal.3d at p. 110.) One of the purposes of voir dire is to expose the possible biases of potential jurors, who can be excused for cause if bias is demonstrated or excused through a peremptory challenge if counsel suspects a possibility of bias. (*In re Hitchings* (1993) 6 Cal.4th 97, 110–111 [24 Cal.Rptr.2d 74, 860 P.2d 466].) "Voir dire cannot serve this purpose if prospective jurors do not answer questions truthfully. 'A juror who conceals relevant facts or gives false answers during the voir dire examination thus undermines the jury selection process and commits misconduct. [Citations.]' [Citations.]" (*In re Hamilton, supra,* 20 Cal.4th at p. 295.)

Juror misconduct raises a rebuttable presumption that the misconduct was prejudicial. (*In re Hamilton, supra,* 20 Cal.4th at p. 295.) Misconduct was prejudicial if there is a substantial likelihood that the juror was biased and that the misconduct affected the verdict. (*Hamilton, supra,* at p. 296; *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 415 [185 Cal.Rptr. 654, 650 P.2d 1171].) A presumption of prejudice is rebutted if the entire record, including the nature of the misconduct and the surrounding circumstances, indicates that there is no reasonable probability of prejudice, i.e., no substantial likelihood that one or more jurors were actually biased against the party moving for a new trial. (*Hamilton, supra,* at p. 296; *Hasson, supra,* at p. 417.)

Evidence of jurors' internal thought processes ordinarily is not admissible to impeach a verdict. (Evid. Code, § 1150, subd. (a);[4] *People v. Hutchinson* (1969) 71 Cal.2d 342, 349–350 [78 Cal.Rptr. 196, 455 P.2d 132].) Evidence is admissible to impeach a verdict only if the evidence refers to objectively ascertainable statements, conduct, conditions, or events. (Evid. Code, § 1150, subd. (a); *In re Hamilton, supra,* 20 Cal.4th at p. 294.) This creates a "substantial barrier to proof of prejudice." (*Hasson v. Ford Motor Co., supra,* 32 Cal.3d at p. 416.) The presumption of prejudice arising from juror misconduct helps to overcome this barrier. (*Ibid.; In re Hamilton, supra,* 20 Cal.4th at p. 295.)

---

[4] "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

The standard of review of an order granting a new trial motion on the ground of juror misconduct generally is abuse of discretion.[5] (*Weathers, supra,* 5 Cal.3d at p. 109.) In particular, we review the trial court's determinations that misconduct occurred and that the misconduct was prejudicial under the abuse of discretion standard. (*People v. Ault* (2004) 33 Cal.4th 1250, 1265 [17 Cal.Rptr.3d 302, 95 P.3d 523]; *Weathers, supra,* at p. 109.) In determining whether misconduct occurred, we defer to the trial court's findings of historical fact and credibility determinations if they are supported by substantial evidence. (*People v. Schmeck* (2005) 37 Cal.4th 240, 294 [33 Cal.Rptr.3d 397, 118 P.3d 451]; *People v. Majors* (1998) 18 Cal.4th 385, 417 [75 Cal.Rptr.2d 684, 956 P.2d 1137]; *Weathers, supra,* at p. 108.) Whether a prospective juror failed to disclose relevant information or answered falsely and whether he or she did so intentionally are questions of fact for the trial court to decide. (*Weathers, supra,* at p. 110 & fn. 5; cf. *In re Hitchings, supra,* 6 Cal.4th at pp. 115–116.)

"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]" (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].)

### 2. *The Court Properly Ordered a New Trial on the Ground of Juror Misconduct*

The trial court found that Juror Salinas had intentionally concealed her knowledge of the Rampart scandal and that her knowledge was substantial. The court weighed the evidence and determined that Salinas's explanation for indicating in response to the voir dire question that she "[had] not heard about" the Rampart scandal was not credible. Salinas's own admission that she had viewed Gang Warz on two occasions before trial, including the scrolling text that generally described the Rampart scandal as a backdrop to the film, tends to show that she at least had heard about the Rampart scandal. Her prominent role in the movie also supports a reasonable inference that she had gained some familiarity with the real events that provided a backdrop to the film before playing her part. The court reasonably concluded that Salinas's explanation that she had merely "heard of the term 'Rampart'

---

[5] We must affirm an order granting a new trial motion if the motion should have been granted on any of the grounds stated in the motion, with certain exceptions. (Code Civ. Proc., § 657, last par.) Because we conclude that the order was proper on the ground of juror misconduct, we need not consider the other grounds stated in the motion.

before" was false. The evidence supports a reasonable inference that Salinas had substantial knowledge of the Rampart scandal and that she intentionally concealed her knowledge.

The record as a whole fails to rebut the presumption of prejudice. The Rampart scandal was a volatile subject that provoked strong feelings of revulsion in some members of the public toward tainted police officers and toward the police department in general, disappointment with the criminal justice system that produced so many false convictions, and sympathy for the victims. In light of these circumstances, and the nine-to-three verdict in favor of a finding of liability, we cannot conclude that there is no reasonable probability either that Salinas was biased against defendants or that her bias affected the result.

We conclude that Ovando has not shown an abuse of discretion and that the court properly ordered a new trial on the ground of juror misconduct. In light of our conclusion, we need not decide whether the order granting a new trial was proper on another ground. Our affirmance of the new trial order means that there is no judgment in effect and that the appeal from the judgment is moot. (*Sandco American, Inc. v. Notrica* (1990) 216 Cal.App.3d 1495, 1498 [265 Cal.Rptr. 587].)

### 3. *The County and Toister Are Not Entitled to Summary Judgment*

The county and Toister challenge the denial of their summary judgment motion. They contend the evidence compels the conclusion that as of the date of his sentencing in March 1997, Ovando knew the facts concerning Toister's failure to introduce evidence and her other allegedly wrongful acts and omissions, and sustained actual injury. They contend Ovando's legal malpractice cause of action therefore accrued no later than March 1997, his claim presented to the county in October 1999 and his application for leave to present a late claim were untimely, and his complaint was barred by the statute of limitations. They argue that they were entitled to summary judgment on the grounds of failure to comply with the claim presentation requirement. The trial court denied the summary judgment motion based on its conclusion that it could not modify or set aside the order by another judge granting Ovando's petition for relief from the claim presentation requirement, and did not decide whether the evidence presented in support of and in opposition to the summary judgment motion would create a triable issue of material fact absent that prior ruling on the date of accrual.

Ovando contends the county and Toister forfeited their defenses based on the alleged untimeliness of his claim and statute of limitations, that they should be barred by judicial estoppel from challenging the denial of their

summary judgment motion, and that defendants suffered no substantial prejudice as a result of the denial and therefore are not entitled to a reversal of the ruling. We need not address those contentions because we conclude that defendants failed to establish a right to summary judgment on the merits of the motion. We also need not decide whether it is appropriate for us to review the denial of the summary judgment motion at this time in light of our affirmance of the new trial order (see Code Civ. Proc., § 906), but instead will assume arguendo that interlocutory review is appropriate.

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) A defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff cannot reasonably obtain needed evidence. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) We review the trial court's ruling de novo, liberally construe the evidence in favor of the opposing party, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)

The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].)

The county and Toister presented evidence in support of their summary judgment motion suggesting that at the time of his criminal trial, and despite his serious injuries, Ovando recalled the events of his shooting and described those events to Toister. They presented evidence that Ovando hired an attorney to represent him in a proposed civil rights action and that the attorney represented Ovando in connection with the proposed civil rights action at the time of the criminal trial. They also presented Ovando's deposition testimony in this action stating that he believed from the beginning that he was falsely incarcerated and that Toister did not believe him, and that he told her that Nene was a percipient witness whom she should find, and presented a handwritten note from Ovando asking Toister to subpoena his

girlfriend, Valenzuela.[6] Defendants also cite Ovando's deposition testimony that Toister "never explained anything to me" and that he had more trust and confidence in his civil attorney, his declaration that he had difficulty communicating with Toister despite an interpreter, and his knowledge that neither Nene nor Valenzuela was called to testify. Defendants argue that this evidence compels the conclusion that Ovando had reason to suspect during the criminal trial, and at the time of his sentencing at the latest, that Toister was negligent and that her negligence was a cause of his conviction. We disagree.

Ovando's belief in his innocence and his dismay that Toister did not believe him do not suggest that he reasonably should have suspected that her representation was inadequate, particularly in light of the inculpatory testimony by two police officers whose misdeeds had not yet come to light. The facts that he was represented by another attorney for purposes of a civil action, that he had more trust and confidence in that attorney than in Toister, and that he had difficulty communicating with Toister also do not necessarily indicate that he actually suspected or reasonably should have suspected that she had blundered. Moreover, Toister stated in a declaration that she had discussed with Ovando the difficulty of locating Nene using only a nickname and that Ovando never provided her with Nene's real name. Defendants presented no evidence suggesting that Toister's explanation for her failure to locate Nene was implausible. Toister's failure to call Valenzuela to testify also did not necessarily give Ovando reason to suspect incompetence. Valenzuela was not present in the room on the night of the shooting and therefore was not a percipient witness to those events. Although some of the evidence cited by defendants may be probative on the issue, we conclude that the evidence does not compel the conclusion that at the time of his sentencing, Ovando actually suspected or reasonably should have suspected that Toister was negligent. Defendants have not established as a matter of law that Ovando's legal malpractice cause of action accrued at that time. Accordingly, we conclude that the denial of summary judgment was proper.

4. *Ovando Must Plead and Prove Compliance with the Claim Presentation Requirement or Show an Excuse for Noncompliance*

a. *Claim Presentation Requirement*

A person must present a timely claim for money or damages to a local public entity before suing the local public entity for money or damages,

---

[6] Ovando controverts some of this evidence in his declaration filed in opposition to the summary judgment motion. Defendants argue that Ovando cannot create a triable issue of fact by contradicting his own deposition testimony. We need not decide the issue because we conclude that defendants failed to satisfy their burden as moving parties, without regard to the opposing evidence.

except in specified circumstances that are not relevant here. (Gov. Code, §§ 905, 905.2, 915, subd. (a), 945.4.) Government Code section 910 describes the information that a claim must contain. A claim relating to a cause of action for death or personal injury must be presented within six months after the accrual of the cause of action.[7] (Gov. Code, § 911.2.) The date of accrual for purposes of the claim presentation requirement is the same date on which the cause of action would accrue for purposes of the statute of limitations in an action against a private party. (*Id.*, § 901; *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208–209 [64 Cal.Rptr.3d 210, 164 P.3d 630].)

A person who fails to present a timely claim may apply to the public entity for leave to present a late claim. (Gov. Code, § 911.4, subd. (a).) The application must be presented to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action . . . ." (*Id.*, subd. (b).) The one-year period is tolled during the time that the person who sustained the injury is mentally incapacitated and has no guardian or conservator. (*Id.*, subd. (c)(1).) The public entity must grant the application if it determines that (1) the failure to present a timely claim was due to mistake, inadvertence, surprise, or excusable neglect, and the public entity was not prejudiced by the delay; (2) the person who sustained the injury was a minor during all of the time during which Government Code section 911.2 required the claim to be presented; (3) the person who sustained the injury was physically or mentally incapacitated during all of the statutory claim presentation period and failed to present a timely claim for that reason; or (4) the person who sustained the injury died before the expiration of the statutory claim presentation period. (*Id.*, § 911.6, subd. (b).)

▪ If the public entity denies the application or the application is denied by operation of law (Gov. Code, § 911.6, subds. (a), (c)), the claimant may petition the court for relief from the claim presentation requirement (*id.*, § 946.6, subd. (a)). The petition for relief must state that an application under Government Code section 911.4 was made to the public entity and was denied or deemed denied, state the reason for failure to timely present the claim as required by Government Code section 911.2, and state the information required by Government Code section 910. (*Id.*, § 946.6, subd. (b).) The court must grant the petition if it determines that the petitioner applied to the public entity for relief under section 911.4 within a reasonable time not

---

[7] Government Code section 911.2, subdivision (a) states that the six-month period applies to "[a] claim relating to a cause of action for death or for injury to person or to personal property or growing crops . . . ." Government Code section 810.8 defines "injury" to include "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person." Thus, the six-month period applies to claims relating to causes of action for personal injury, including not only physical injury but also emotional injury and injury to reputation.

exceeding one year after the cause of action accrued, that the application was denied or deemed denied by operation of law, and that one of the following is true: (1) the failure to present a timely claim was due to mistake, inadvertence, surprise, or excusable neglect, and the public entity has not established that it would be prejudiced in its defense if the court relieved the petitioner from the claim filing requirement; (2) the person who sustained the injury was a minor during all of the time during which Government Code section 911.2 required the claim to be presented; (3) the person who sustained the injury was physically or mentally incapacitated during all of the statutory claim presentation period and failed to present a timely claim for that reason; or (4) the person who sustained the injury died before the expiration of the statutory claim presentation period. (*Id.*, § 946.6, subd. (c).)

■ A petition for relief from the claim presentation requirement under Government Code section 946.6 is a special proceeding. (*Jefferson v. County of Kern* (2002) 98 Cal.App.4th 606, 612, fn. 16 [120 Cal.Rptr.2d 1]; *County of Sacramento v. Superior Court* (1974) 42 Cal.App.3d 135, 140 [116 Cal.Rptr. 602]; see Code Civ. Proc., §§ 21–23.) The court hearing the petition makes an independent determination on the petition. (Gov. Code, § 946.6, subd. (e).) If the court grants relief from the claim presentation requirement, the petitioner must file a complaint on the cause of action within 30 days after the order granting relief. (*Id.*, subd. (f).)

An order denying relief from the claim presentation requirement under Government Code section 946.6 is appealable. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 435, fn. 8 [197 Cal.Rptr. 601, 673 P.2d 271].) An order granting relief is not appealable, but may be reviewed on appeal from a judgment or appealable order on the cause of action stated in the claim. (Code Civ. Proc., § 906; see *County of Alameda v. Superior Court* (1987) 196 Cal.App.3d 619, 622 [242 Cal.Rptr. 215].) We review the ruling on a petition under section 946.6 for abuse of discretion. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [228 Cal.Rptr. 190, 721 P.2d 71].)

"Section 946.6 is a remedial statute intended 'to provide relief from technical rules that otherwise provide a trap for the unwary claimant.' [Citations.] As such, it is construed in favor of relief whenever possible. [Citation.] [¶] The policy favoring trial on the merits is the primary policy underlying section 946.6. [Citation.] In order to implement this policy, any doubts should be resolved in favor of granting relief. [Citation.] Consequently, where uncontradicted evidence or affidavits of the petitioner establish adequate cause for relief, denial of relief constitutes an abuse of discretion. [Citations.] In light of the policy considerations underlying section 946.6, a trial court decision denying relief will be scrutinized more carefully than an order granting relief. [Citation.]" (*Bettencourt v. Los Rios Community College Dist.*, *supra*, 42 Cal.3d at pp. 275–276.)

A plaintiff suing the state or a local public entity must allege facts demonstrating either compliance with the claim presentation requirement or an excuse for noncompliance as an essential element of the cause of action. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1243–1244 [13 Cal.Rptr.3d 534, 90 P.3d 116]; *Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1119 [31 Cal.Rptr.2d 8].) The plaintiff must prove compliance with the claim presentation requirement, or establish an excuse for noncompliance, to establish the defendant's liability. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767 [115 Cal.Rptr.2d 705].)

> b. *The Accrual of Ovando's Legal Malpractice Cause of Action Was Not Delayed as a Matter of Law Until His Convictions Were Set Aside*

Government Code section 946.6 authorizes a court to relieve a petitioner from the claim presentation requirement based on specified grounds. The statute grants the court discretion to determine whether the statutory grounds are satisfied and contemplates factual findings by the court in connection with that exercise of discretion. (*County of Sacramento v. Superior Court, supra,* 42 Cal.App.3d at p. 139.) Courts are split on the effect of factual findings made in connection with a section 946.6 petition in a later action for damages on a cause of action stated in the claim.[8] We need not decide that question here because in this case, the order granting the petition based on the date of accrual relied not on the court's resolution of a disputed factual issue, but on its answer to a legal question.

---

[8] Some courts have stated that a plaintiff in an action for damages has a right to a jury trial on the factual issue of the date of accrual of a cause of action, and that a finding as to the date of accrual by a court in connection with a Government Code section 946.6 petition cannot deprive the plaintiff of the right to a jury trial and therefore is not binding in a later action for damages. (See *Ngo v. County of Los Angeles* (1989) 207 Cal.App.3d 946, 951–952 [255 Cal.Rptr. 140]; *Scott v. County of Los Angeles* (1977) 73 Cal.App.3d 476, 481–482 [140 Cal.Rptr. 785]; see also *Jefferson v. County of Kern, supra,* 98 Cal.App.4th at p. 617 [stating that although there is no right to a jury trial on the date of accrual in a proceeding under § 946.6, there is such a right in an action for damages].) Similarly, some courts have stated that section 946.6 authorizes a court to relieve a plaintiff from the claim presentation requirement, but does not authorize a court to determine that the plaintiff complied with the claim presentation requirement by presenting a timely claim. (*Ngo, supra,* at p. 951; *Rason v. Santa Barbara City Housing Authority* (1988) 201 Cal.App.3d 817, 827 [247 Cal.Rptr. 492]; see also *Gurrola v. County of Los Angeles* (1984) 153 Cal.App.3d 145, 150, 153 [200 Cal.Rptr. 157] [stated that it was improper for the court to decide that the claim was untimely but that the petitioner sought such a determination and was bound by collateral estoppel].) Other courts have suggested that a section 946.6 petition necessarily puts the date of accrual at issue and that the court's determination that a claim was untimely is binding in a later action for damages. (See *Reyes v. County of Los Angeles* (1988) 197 Cal.App.3d 584, 595–596 & fn. 5 [243 Cal.Rptr. 35]; see also *Gurrola, supra,* at pp. 150, 153.) Because the question presented here is different, we need not decide between or attempt to reconcile these opinions.

The court hearing the Government Code section 946.6 petition concluded as a matter of law that Ovando's legal malpractice claim could not accrue until his convictions were set aside in the habeas corpus proceeding. Ovando contends his legal malpractice cause of action did not accrue until his convictions were set aside because he could not establish either his actual innocence or causation until that time. We conclude that any impediment to proving his cause of action did not delay the accrual of his cause of action, as we shall explain.[9]

■ A cause of action ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is entitled to prosecute an action. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 [107 Cal.Rptr.2d 369, 23 P.3d 601]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79].) In other words, a cause of action accrues " ' " 'upon the occurrence of the last element essential to the cause of action.' " ' " (*Howard Jarvis, supra,* at p. 815.) The common law delayed discovery rule is an exception to the general rule and provides that a cause of action does not accrue until a plaintiff discovers, or reasonably should discover, the cause of action. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [27 Cal.Rptr.3d 661, 110 P.3d 914].) The elements that the plaintiff must suspect are the generic elements of wrongdoing, causation, and harm. (*Ibid.*)[10] A plaintiff who suspects that he or she has suffered an injury caused by the wrongdoing of another is charged with the knowledge that a reasonable investigation would reveal, and the limitations period begins to run at that time. (*Fox,* at pp. 807–808 & fn. 2.)

■ Code of Civil Procedure section 340.6, subdivision (a) codified the delayed discovery rule in legal malpractice actions in relevant part, but with a one-year limit from the date of actual or imputed discovery. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 511 [66 Cal.Rptr.3d 52, 167 P.3d 666].) Code of Civil Procedure section 340.6, subdivision (a) states: "An action against an attorney for a wrongful act or omission, other than for

---

[9] We address this legal question concerning the date of accrual of Ovando's legal malpractice cause of action because it is likely to arise again on remand (Code Civ. Proc., § 43) and because the parties have fully briefed the issue and presented it for our decision.

[10] "*Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm. (*Norgart, supra,* 21 Cal.4th at p. 397.) In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at p. 807.)

actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury;

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

The elements of a cause of action for legal malpractice arising out of a criminal proceeding are (1) the attorney's duty to use a level of skill, prudence, and diligence commonly possessed and exercised by attorneys; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; (4) actual loss or damage resulting from the attorney's negligence; and (5) actual innocence of the former criminal defendant. (*Coscia, supra*, 25 Cal.4th at pp. 1199–1200.)

*Wiley* held that in a legal malpractice action arising out of a criminal proceeding, actual innocence is an essential element of the cause of action and the plaintiff must prove that he or she did not commit the crime of which he or she was convicted. (*Wiley v. County of San Diego, supra*, 19 Cal.4th at p. 545 (*Wiley*).) *Wiley* expressly did not decide the related question whether the plaintiff must obtain exoneration by postconviction relief as a prerequisite to maintaining a legal malpractice cause of action, but noted that the question "has significant implications, e.g., for determining statute of limitations and collateral estoppel issues." (*Id.* at p. 537, fn. 2.)

*Coscia, supra*, 25 Cal.4th 1194, decided the question left open in *Wiley, supra*, 19 Cal.4th 532. *Coscia* concluded that an intact conviction precludes

proof of actual innocence, and held that a former criminal defendant must obtain exoneration by postconviction relief in order to prevail on a legal malpractice cause of action. (*Coscia, supra,* at pp. 1204–1205.) *Coscia* expressly did not decide whether exceptional circumstances might justify a departure from this rule due to the difficulty of obtaining or practical unavailability of postconviction relief.[11] (*Coscia,* at p. 1205, fn. 4.) *Coscia* also addressed the effect of the requirement of exoneration by postconviction relief on the statute of limitations for legal malpractice (Code Civ. Proc., § 340.6). (*Coscia, supra,* at pp. 1206–1207.)

*Coscia* rejected the argument that "the time required to complete postconviction proceedings" would result in the running of the limitations period for legal malpractice before a plaintiff could prevail on a legal malpractice cause of action and therefore would unfairly preclude legitimate malpractice actions. (*Coscia, supra,* 25 Cal.4th at p. 1207.) *Coscia* cited opinions from other states in which the courts approved a "two-track approach" requiring the stay of a legal malpractice action pending the completion of postconviction proceedings for exoneration. (*Id.* at pp. 1208–1210.) *Coscia* approved the two-track approach, stating: "[T]he plaintiff must file a malpractice claim within the one-year or four-year limitations period set forth in Code of Civil Procedure section 340.6, subdivision (a). Although such an action is subject to demurrer or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period in which such a plaintiff timely and diligently pursues postconviction remedies. . . . By this means, courts can ensure that the plaintiff's claim will not be barred prematurely by the statute of limitations." (*Id.* at pp. 1210–1211.) Accordingly, *Coscia* concluded that the requirement of exoneration by postconviction relief would not, as a practical matter, preclude legitimate malpractice actions by operation of the statute of limitations. (*Id.* at pp. 1207, 1210.)

*Coscia* also rejected the argument that a legal malpractice cause of action arising from a criminal proceeding does not accrue unless and until the plaintiff obtains exoneration by postconviction relief. (*Coscia, supra,* 25 Cal.4th at pp. 1209–1210.) *Coscia* stated that the argument was inconsistent with its prior opinions addressing the subject of accrual and actual injury

---

[11] "We have no occasion in the present case to determine whether there might be exceptional circumstances—for example, where the plaintiff establishes that habeas corpus or other postconviction relief is unavailable and that he or she could not reasonably have been expected to have pursued such measures—under which a plaintiff should be afforded an opportunity to establish actual innocence in the malpractice action itself. Coscia does not allege any such circumstances here." (*Coscia, supra,* 25 Cal.4th at p. 1205, fn. 4.)

under Code of Civil Procedure section 340.6, subdivision (a). (*Coscia, supra,* at p. 1209.)

Neither *Wiley, supra,* 19 Cal.4th 532, nor *Coscia, supra,* 25 Cal.4th 1194, held that exoneration by postconviction relief is an essential element of a legal malpractice cause of action arising out of a criminal proceeding. Rather, *Wiley* held that actual innocence is an essential element of the cause of action (*Wiley, supra,* 19 Cal.4th at p. 545), and *Coscia* held that a plaintiff cannot prove actual innocence unless and until the plaintiff obtains exoneration by postconviction relief (*Coscia, supra,* 25 Cal.4th at p. 1201). A plaintiff's inability to prove an element of a cause of action does not compel the conclusion that the plaintiff does not suspect, or have reason to suspect, a factual basis for that element. Ovando's convictions did not prevent him from suspecting, or actually knowing, that he was innocent. His convictions and the absence of exoneration by postconviction relief therefore did not delay the accrual of his legal malpractice cause of action on that basis.

Ovando cites *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 48 [170 Cal.Rptr. 533], in which we held that collateral estoppel precluded the plaintiff from relitigating the issue of guilt as established by a prior conviction. We concluded that the plaintiff's guilt was the sole proximate cause of his criminal indictment, and that the plaintiff therefore could not maintain a cause of action for legal malpractice and other causes of action arising from the attorneys' representation of the plaintiff in connection with an investigation by the Securities and Exchange Commission prior to the indictment. (*Ibid.*; see *Coscia, supra,* 25 Cal.4th at pp. 1200–1201 [citing *Weiner* with approval]; *Wiley, supra,* 19 Cal.4th at pp. 536–537 [citing *Weiner* with approval].) Ovando argues that under *Weiner* there was no causation until he was exonerated, that his cause of action "was lacking an essential element," and that his cause of action therefore did not accrue until he was exonerated. We conclude that Ovando's inability to prove causation due to collateral estoppel did not delay the accrual of his cause of action because it did not prevent him from suspecting that his attorney's negligence was a proximate cause of his convictions.

Our rejection of the argument that the accrual of Ovando's legal malpractice cause of action was delayed as a matter of law until his convictions were set aside is not based on a rule of law established for the first time in *Coscia, supra,* 25 Cal.4th 1194. Rather, as *Coscia* stated (*id.* at pp. 1209–1210) and as we have explained, Ovando's argument is inconsistent with prior established law governing the accrual of a legal malpractice cause of action.

Accordingly, we need not decide whether the rule of law established in *Coscia* concerning accrual of a legal malpractice cause of action applies retroactively.

■ We therefore conclude that the court hearing the Government Code section 946.6 petition erred by ruling that Ovando's legal malpractice cause of action did not accrue until his convictions were set aside in the habeas corpus proceeding and that his claim presented to the county was timely on that basis. Ovando must allege facts demonstrating either compliance with the claim presentation requirement or an excuse for noncompliance, and must either prove compliance with the claim presentation requirement or establish an excuse for noncompliance to establish defendants' liability, as stated *ante*.

5. *Proposition 51 Requires the Apportionment of Fault Among all Tortfeasors, Including Perez and Durden*

a. *Proposition 51*

Ovando contends Proposition 51 does not require the apportionment of fault to Perez and Durden because they are immune from liability pursuant to Government Code section 821.6 and because damages for legal malpractice are not subject to apportionment as a matter of law. Ovando challenges the order granting a new trial on the ground of insufficiency of the evidence to support the verdict as to apportionment of fault on this basis. We need not decide whether the order granting a new trial on this ground was proper because we conclude that the order was proper on the ground of juror misconduct, as stated *ante*. We will address the effect of Proposition 51 in this case nonetheless because the issue is likely to arise again on remand. (Code Civ. Proc., § 43.)

■ California voters approved Proposition 51 in 1986. Proposition 51 modified the common law rule that multiple tortfeasors responsible for the same indivisible injury were jointly and severally liable to the plaintiff for all damages. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 598–600 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*); *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 586–587 [146 Cal.Rptr. 182, 578 P.2d 899].) In an action subject to Proposition 51, each defendant remains jointly and severally liable to the plaintiff for economic damages, but is liable to the plaintiff for only its proportionate share of noneconomic damages based on its degree of fault. (Civ. Code, § 1431.2, subd. (a); *DaFonte, supra*, at p. 600.)

Civil Code section 1431.2, subdivision (a) states: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages

shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

b.  *Perez's and Durden's Purported Immunity from Suit Does Not Preclude the Apportionment of Fault in This Action*

Proposition 51 requires the apportionment of fault among all persons whose fault contributed to the same indivisible injury, including nonparties. (*DaFonte, supra*, 2 Cal.4th at p. 603.) *DaFonte* held that an employer's immunity from tort liability for a work-related injury covered by workers' compensation did not prevent the apportionment of fault to the employer in an action against an equipment manufacturer for the purpose of determining the defendant's percentage of fault. (*Id.* at pp. 601–604.) *DaFonte* stated, "The statute [Civil Code section 1431.2] neither states nor implies an exception for damages attributable to the fault of persons who are immune from liability or have no mutual joint obligation to pay missing shares." (*Id.* at p. 601.) *DaFonte* stated further, "the only reasonable construction of section 1431.2 is that a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit. [Citation.]" (*Id.* at p. 603.) Thus, *DaFonte* established that an absent tortfeasor's immunity from liability does not prevent the apportionment of fault to the absent tortfeasor for purposes of determining a defendant's percentage of fault under Proposition 51, and that Proposition 51 requires such an apportionment. As the California Supreme Court later stated in *Richards v. Owens-Illinois, Inc.* (1997) 14 Cal.4th 985, 989 [60 Cal.Rptr.2d 103, 928 P.2d 1181] (*Richards*), "*DaFonte* held that Proposition 51 permits a tort defendant to apportion 'fault' among all 'tortfeasors' responsible for the injury, whether or not present in the action, including those who are immune from direct suit."

*Richards, supra*, 14 Cal.4th 985, involved a personal injury suit against asbestos manufacturers. The question addressed in *Richards* was whether Civil Code former section 1714.45, which provided tobacco manufacturers and sellers with immunity from liability in products liability actions, precluded the apportionment of fault to tobacco manufacturers as nonparties in a smoker's suit for asbestos-related lung injury. (*Richards, supra*, at p. 988.) The statutory immunity expressly applied to products that were known to be "inherently unsafe" and were "a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts." (Civ. Code, former § 1714.45, subd. (a)(1), (2).) *Richards* concluded

that the "clear premise of comment *i*," on which the statute was based, was that a manufacturer or seller breaches no legal duty to consumers who voluntarily consume products that are known to be inherently dangerous. (*Richards, supra,* at p. 1000.) *Richards* held that former section 1714.45 established that manufacturers and sellers of tobacco products breached no legal duty to consumers and were not responsible in tort, and that they therefore bore no "fault" for purposes of Proposition 51. (*Richards, supra,* at pp. 1000–1002.) *Richards* distinguished *DaFonte, supra,* 2 Cal.4th 593, on the ground that an employer's immunity based on the workers' compensation scheme does not imply that a negligent employer bears no fault or is not a tortfeasor. (*Richards, supra,* at p. 998; see also *Munoz v. City of Union City* (2007) 148 Cal.App.4th 173, 182 [55 Cal.Rptr.3d 393] [held that principles of sovereign immunity compelled the conclusion that the city not only was not liable but also owed no legal duty and was not a tortfeasor, and therefore could not be apportioned fault]; *Ford v. Polaris Industries, Inc.* (2006) 139 Cal.App.4th 755, 778–779 [43 Cal.Rptr.3d 215] [held that the determination that the plaintiff assumed the risks inherent in jet skiing compelled the conclusion that a coparticipant owed no legal duty and was not a tortfeasor, and therefore could not be apportioned fault].)

"*Richards* and *DaFonte* establish that under Proposition 51, fault will be allocated to an entity that is immune from *paying for* its tortious acts, but will not be allocated to an entity that is not a tortfeasor, that is, one whose actions have been declared not to be tortious."[12] (*Taylor v. John Crane, Inc.* (2003) 113 Cal.App.4th 1063, 1071 [6 Cal.Rptr.3d 695].)

■■■ Government Code section 821.6 states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The purpose of the statutory immunity is to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil action. (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293 [89 Cal.Rptr.2d 60].) Neither the statutory language, nor the purpose of the statute, nor any other material that has been cited to us suggests that the immunity is based on a legislative determination that a public employee in those circumstances breaches no legal duty and bears no "fault" for any injury caused. Accordingly, we conclude that Proposition 51 requires the apportionment of fault to all alleged

---

[12] We decline to follow dictum in *Arena v. Owens-Corning Fiberglas Corp.* (1998) 63 Cal.App.4th 1178, 1195, footnote 10 [74 Cal.Rptr.2d 580] stating, "Unlike an employer, whose immunity is founded on an alternative compensation scheme, a defendant who is truly immune from liability cannot be allocated a percentage of responsibility for damages." *Arena* failed to recognize the critical distinction between a tortfeasor's immunity from liability and a determination that a person breached no legal duty and committed no tort.

tortfeasors responsible for Ovando's injuries, including Perez and Durden, notwithstanding any immunity under Government Code section 821.6.

       c.  *Proposition 51 Requires the Apportionment of Fault in a Legal Malpractice Action Seeking Primarily Noneconomic Damages*

     ■  Proposition 51 applies "[i]n any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault." (Civ. Code, § 1431.2, subd. (a).) Ovando sought damages for only emotional distress and physical pain, and the court instructed the jury on only those elements of damages. Emotional distress and physical pain are forms of personal injury. We conclude that a legal malpractice action seeking primarily noneconomic damages for emotional distress and physical pain is an "action for personal injury" within the plain meaning of Civil Code section 1431.2, subdivision (a). (Cf. *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 432 [280 Cal.Rptr. 83, 808 P.2d 226] [held that a suit seeking primarily emotional distress was an " 'action . . . for personal injury or wrongful death' " for purposes of Code Civ. Proc., § 425.10].)

     Emotional distress damages ordinarily are not recoverable in a legal malpractice action if the representation concerned primarily the client's economic interests and the emotional injury derived from an economic loss. (*Camenisch v. Superior Court* (1996) 44 Cal.App.4th 1689, 1697 [52 Cal.Rptr.2d 450]; *Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, 8–11 [4 Cal.Rptr.2d 87], disapproved on another point in *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1053 [135 Cal.Rptr.2d 46, 69 P.3d 965]; see *Erlich v. Menezes* (1999) 21 Cal.4th 543, 556 [87 Cal.Rptr.2d 886, 981 P.2d 978].) California courts have explained that an attorney's duty to his or her client in civil litigation ordinarily concerns the client's economic interests and does not extend to protection against emotional injury. (*Pleasant v. Celli* (1993) 18 Cal.App.4th 841, 853–854 [22 Cal.Rptr.2d 663], disapproved on another point in *Adams v. Paul* (1995) 11 Cal.4th 583, 591, fn. 4 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (lead opn. of Arabian, J.); *Merenda, supra,* 3 Cal.App.4th at p. 10; see *Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 472–473 [131 Cal.Rptr.2d 885].) If the representation concerns primarily economic interests, "the foreseeability of serious emotional harm to the client and the degree of certainty that the client suffered such injury by loss of an economic claim are tenuous." (*Merenda, supra,* at p. 10; accord, *Erlich, supra,* 21 Cal.4th at p. 556 [quoting *Merenda*].) In a criminal case, however, the primary interest at stake in the defendant's legal representation is the defendant's liberty. An emotional injury resulting from the incarceration of an innocent defendant is plainly foreseeable. Accordingly, a defense attorney in a criminal case owes a duty to

his or her client to avoid such an injury and can be held liable for emotional distress in a legal malpractice action. (*Holliday v. Jones* (1989) 215 Cal.App.3d 102, 117–119 [264 Cal.Rptr. 448]; see *Friedman, supra,* 107 Cal.App.4th at p. 473; *Pleasant, supra,* 18 Cal.App.4th at p. 854; Rest.3d Law Governing Lawyers, § 53, com. g, p. 393.)

*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29 [3 Cal.Rptr.3d 330] is not on point. The plaintiffs in *Brandon G.* were two minor children who suffered sexual molestation at a daycare facility, and their parents. The county social services department had received several complaints about the facility, but represented to the parents before they enrolled their children that there were no complaints. The plaintiffs hired an attorney who presented a claim to the county. The county rejected the claim as untimely and later rejected an application for leave to present a late claim. A successor attorney filed a complaint against the county. The court granted summary judgment against the plaintiffs based on failure to comply with the claim presentation requirement. The plaintiffs then sued the attorney who had presented the claim to the county for legal malpractice. (*Id.* at pp. 32–33.) The jury returned a special verdict finding that the attorney had committed malpractice. The special verdict determined the amounts of economic and noneconomic damages suffered as a result of the molestation and apportioned fault for those damages among the plaintiffs, the attorney, and a former attorney. (*Id.* at p. 34.) The trial court awarded damages against the attorney, consisting of the amount of economic damages suffered as a result of the molestation reduced by the plaintiffs' proportionate share of comparative fault and a credit for a good faith settlement, plus the attorney's proportionate share of noneconomic damages. (*Id.* at p. 38.)

*Brandon G.* held that Proposition 51 did not apply to the legal malpractice action because the action was not an "action[] for personal injury, property damage, or wrongful death" within the meaning of Civil Code section 1431.2, subdivision (a). (*Brandon G. v. Gray, supra,* 111 Cal.App.4th at p. 39.) *Brandon G.* explained that although the action against the county was for personal injury, the legal malpractice action sought to recover not damages for personal injury, but the value of the cause of action lost as a result of the failure to timely present a claim. (*Ibid.*) Thus, the court concluded that the loss of the cause of action could not be characterized as a "personal injury" within the meaning of the statute. *Brandon G.* explained further that even if Proposition 51 applied, the damages sought in the legal malpractice action were purely economic damages, so there was no basis for apportionment. (111 Cal.App.4th at p. 39, fn. 6.) Because Ovando seeks damages for emotional distress and physical pain suffered as a result of the alleged legal malpractice, rather than purely economic damages for the value of a lost cause of action, *Brandon G.* is not on point.

## DISPOSITION

The order granting a new trial is affirmed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. The appeal from the judgment is dismissed as moot, and the appeal from the order denying the motion for judgment notwithstanding the verdict is dismissed. The parties shall bear their own costs in these appeals.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied February 7, 2008, and the petition of appellant Javier F. Ovando for review by the Supreme Court was denied April 16, 2008, S161283. George, C. J., did not participate therein.