Filed 8/25/14

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASON PEDRO, | B249005 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS133554) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Michael N. Feuer, City Attorney, Carlos De La Guerra, Managing Assistant City Attorney, Wayne H. Song, Supervising Deputy City Attorney, and Bruce Monroe, Deputy City Attorney, for Defendants and Appellants.

Silver, Hadden, Silver, Wexler & Levine, Susan Silver and Jacob A. Kalinski for Plaintiff and Respondent.

The City of Los Angeles and Charles Beck (collectively the City) appeal a judgment granting a peremptory writ of mandate in favor of Jason Pedro, a police officer. Beck, as chief of police, charged Pedro with four counts of misconduct involving the use of a city police vehicle for personal business on two occasions, making a discourteous statement to a member of the public, and making a misleading statement to a supervisor conducting an official investigation. A Board of Rights found that three counts were barred by the statute of limitations. Beck expressed his disagreement, and the board later found Pedro guilty on all four counts and recommended a 22-day suspension without pay. Beck approved the recommendation. Pedro filed a petition for writ of administrative mandamus challenging the decision.

The trial court found in favor of Pedro on each count. It concluded that Beck had improperly directed the Board of Rights to find that the counts were not barred by the statute of limitations. Exercising its independent judgment, the court found that counts one and four were barred by the statute of limitations, and that counts two and three were not barred. It also concluded that Pedro was not informed that he was being investigated for misconduct prior to his interrogation, as required by law. The court therefore suppressed evidence of Pedro's statement to the supervisor and set aside the guilty finding on count four. Although the court found that counts two and three were not barred by the statute of limitations, it determined that the Board of Rights had found that those counts were barred. The court concluded that the board's finding was final and binding because the City failed to file a writ petition challenging the decision.

2

The City challenges the trial court's decision on counts two, three, and four. It contends those counts are not barred by the statute of limitations, Beck properly made the final administrative decision so finding, and the court erred by suppressing evidence of Pedro's statement to the supervisor.

We conclude that the Board of Rights failed to proceed in the manner required by law by deferring to Beck's determination on the statute of limitations rather than making a decision consistent with its own findings, and its findings do not support its decision. We also conclude that ignorance of the accused officer's identity does not postpone the commencement of the one-year limitations period under Government Code section 3304, subdivision (d)(1), so counts two and three are barred by the statute of limitations. We conclude further that the discovery rule applies, and the trial court properly determined that count four is time-barred. We therefore will affirm the judgment granting a peremptory writ of mandate on all four counts.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

Pedro drove a female friend, a minor, to a medical clinic in an unmarked police car on November 9, 2009, while he was on duty and in uniform. Francis O'Brien attempted to distribute anti-abortion literature to Pedro upon his arrival at the clinic, but Pedro declined without speaking to O'Brien. O'Brien called the police department to complain that an officer was conducting personal business while on duty, and identified the police car by license number. As a result of the call, the police station watch

3

commander directed Sergeant Rodney Peacock to investigate the matter. Peacock drove to the clinic.

Pedro was walking from the clinic back to his car when he saw Peacock, whom he knew. Pedro greeted Peacock, and the two exchanged pleasantries. Peacock asked Pedro what he was doing there. Pedro responded that he had dropped someone off at the clinic. Pedro then asked Peacock what he was doing there. Peacock responded that he was visiting a store nearby. Peacock then asked Pedro whether the person he had dropped off was a victim. According to Pedro, he did not directly respond to the query because he thought it was just small talk. But Peacock wrote in his report that Pedro stated that he was "working the Gang Unit in Detectives and was conducting a Follow up with a victim." Peacock informed the watch commander, and the watch commander called O'Brien to inform him of their findings.

Pedro drove the same minor to the same medical clinic in an unmarked police car on November 30, 2009, while he was on duty and in uniform. O'Brien approached the passenger side and offered them anti-abortion literature. According to Pedro, he declined the literature and asked O'Brien to leave, but O'Brien persisted. Pedro then told him, "Get the hell back," and O'Brien backed away from the car. According to O'Brien, Pedro did not speak or respond until he rolled down the passenger window and stated forcefully, "Get the fuck away from the car," and then repeated that same statement.

O'Brien sent a letter to the chief of police dated December 1, 2009, stating his suspicions that an officer driving an unmarked police car was conducting personal

4

business on the job on November 9 and 30, 2009. The letter stated the license number of the car. The letter also stated that on the latter occasion the driver twice stated to O'Brien, "Get the f___ away from the car." The office of the chief of police received the letter on December 3, 2009. A lieutenant forwarded the letter to Hollenbeck Area on December 10, 2009, to investigate "possible officer misconduct." The task was assigned to a lieutenant in Hollenbeck Area, where Pedro was assigned, on December 16, 2009.

An administrative complaint was served on Pedro on December 20, 2010, charging him with four counts of misconduct: (1) using a city vehicle inappropriately to transport a member of the public in order to conduct personal business while on duty, on November 9, 2009; (2) using a city vehicle inappropriately to transport a member of the public in order to conduct personal business while on duty, on November 30, 2009; (3) making a discourteous statement to O'Brien while on duty, on November 30, 2009; and (4) making a misleading statement while on duty to a police department supervisor conducting an official investigation, on November 9, 2009. Pedro was temporarily relieved from duty on December 21, 2010, after approximately 15 years of service as a police officer for the city.

2. *Board of Rights Hearing and Decision*

A Board of Rights hearing commenced on April 29, 2011. Pedro pled "guilty, but with an explanation" to counts one and two. He pled "not guilty" to counts three and four. The board heard testimony by O'Brien and Peacock before Pedro moved to dismiss the charges.

Pedro moved to dismiss all counts based on the one-year statute of limitations of Government Code section 3304, subdivision (d)(1). The board consulted with an attorney from the city attorney's office and concluded that the first three counts were barred by the statute of limitations. The board chairperson stated that the board therefore would find Pedro "not guilty" on the first three counts. He stated that the board was uncertain as to whether the fourth count was barred by the statute of limitations and would hear further testimony on the fourth count. Another board member then asked whether the finding on count three would be "not guilty or out of statute." The chairperson responded, "I guess they're all out of statute then, whatever the classification for that is."

The City moved for reconsideration of the ruling when the Board of Rights reconvened on May 6, 2011. The advocate for the police department stated that he had consulted with an attorney from the city attorney's office who concluded that the three counts were not barred by the statute of limitations. The City filed a written motion for reconsideration. The board considered the motion, consulted with counsel, and, on May 12, 2011, concluded again that counts one, two, and three were barred by the statute of limitations. The board also concluded that count four was not time-barred, and proceeded to hear further testimony.

The advocate for the police department then quoted section 260.60 of the police department's Board of Rights Manual (12th ed. 2005), which states:

"When a Board of Rights determines through the examination of evidence that one or more of the charges is outside the applicable statute of limitations period, the

6

Board shall without delay forward to the Chief of Police a proposed amended complaint with the out-of-statute charge or charges removed. The Board shall, with the proposed amended complaint, notify the Chief of Police that the amendment is proposed because the Board has determined that the charge or charges to be removed exceed the statute of limitations, and shall request that the Chief of Police sign the amended complaint without delay. If the Board determines that all of the charges are outside the applicable statute of limitations the Board shall request that the Chief of Police remove the charges and close the Board."

The parties agreed to proceed with the board proceedings. The board chairperson stated that the board would be notified if and when the chief of police signed the proposed amended complaint.

An advocate for the police department reported to the Board of Rights on May 12, 2011, that he had met with the chief of police "per Board of Rights Manual section 260.60." The advocate stated:

"I briefed the C.O.P. regarding the board's position regarding statute as articulated by [board chairperson] Commander Chow and the recording provided by [Pedro's counsel] Mr. Quan. I provided the briefs submitted by the defense and the department which have been entered as exhibits. And after deliberating on the matter, the chief has affirmed his original position that all four counts are in statute and directs the board to proceed as such."

Pedro argued that the chief of police had no authority to overrule the board's decision on the running of the statute of limitations. The police department's advocate

7

argued that the chief of police was not required to sign the proposed amended complaint and that the board's decision on the statute of limitations was only a recommendation. The board chairperson stated that the board would consider all four counts and asked whether the parties wished to call additional witnesses specifically relating to count three. The defense called an additional witness, and Pedro was recalled for further testimony before both sides rested.

The board chairperson orally announced the board's findings on May 27, 2011. The board accepted Pedro's guilty pleas on counts one and two. The chairperson stated that count three turned on the credibility of witnesses and that the board found O'Brien to be the more credible witness and concluded that Pedro had made the discourteous statement as alleged.

The board chairperson stated that count four was by far the most serious charge. The board found that Peacock's contact with Pedro was "an investigation," albeit "a preliminary investigation," and that "Peacock did a poor job of doing his preliminary investigation." It found that Pedro's account of his conversation with Peacock was not completely credible and that Pedro had knowingly misled Peacock to believe that he was conducting legitimate police business at the time, rather than personal business.

The board rejected Pedro's argument that he was entitled to notice that he was being investigated. The chairperson stated, "To require every conversation to be predicated with an admonishment that it is official or not is not practical, nor can any organization function like that." He also stated, addressing Pedro, "The fact that Sergeant Peacock did not notify you of the nature of the complaint and that he did not

8

record his interview with you does not alter the official nature of his investigation, and his action was not a violation of the Public Safety Officers Procedural Bill of Rights Act." The chairperson stated further, "Sergeant Peacock was conducting a preliminary investigation to determine if misconduct had, in fact, occurred. And he had no obligation to tell officer Pedro the nature of the complaint at the time, and there was no requirement that he tape-record the statement made by officer Pedro at that time. He was not conducting an interrogation into a personnel complaint investigation on the date and time in question."

The chairperson also stated that the board believed that Pedro was not completely truthful in describing his platonic relationship with the minor, who apparently was 16 years old at the time of the incident, or in stating that he did not know either the nature of her visit to the clinic or that abortions were performed there.

The Board of Rights found Pedro guilty on all four accounts. The chairperson did not discuss the statute of limitations in announcing the board's findings. The board later recommended a 22-day suspension.

3. *Petition for Writ of Administrative Mandamus*

Pedro filed a petition for writ of administrative mandamus against the City in August 2011 challenging his suspension. He alleges that counts one, two, and three against him are barred by the statute of limitations and that the chief of police had no authority to reject the Board of Review's findings. He also alleges that his rights under Government Code section 3303 were violated when Peacock questioned him on November 9, 2009, without informing him that he was being investigated for

9

misconduct. He alleges further that the findings do not support the decision and that the evidence does not support the findings. Pedro seeks damages, civil penalties, and injunctive relief.

4. *Tentative Decision*

The trial court conducted a hearing on the merits of the petition in March 2013. The court issued a tentative decision before the hearing stating its tentative factual findings, applying the independent judgment test (Code Civ. Proc., § 1094.5, subd. (c)), and conclusions of law. The tentative decision stated that the one-year limitations period under Government Code section 3304, subdivision (d)(1) began to run on count one on November 9, 2009, because Peacock, a police department supervisor, became aware of an allegation of misconduct against Pedro on that date. It stated that the limitations period began to run on count four on the same date because "Sgt. Peacock was obligated to investigate the allegation with reasonable diligence" but failed to do so. The court tentatively concluded that counts one and four were barred by the statute of limitations.

The tentative decision stated as to counts two and three that Government Code section 3304, subdivision (d)(1) should be interpreted to mean that a supervisor must know the identity of the accused officer before the one-year limitations period begins to run. It stated that Pedro had failed to show that a supervisor actually discovered or reasonably should have discovered on or before December 20, 2009, that Pedro was the officer involved in the incident of November 30, 2009. The trial court therefore

10

tentatively concluded that counts two and three were not barred by the statute of limitations.

The tentative decision also stated that Peacock's encounter with Pedro on November 9, 2009, involved both an "investigation" and an "interrogation" within the meaning of Government Code section 3303, subdivision (c) and that Pedro was entitled to know the nature of the investigation before being interrogated. The trial court therefore tentatively concluded that the city and Beck violated the statute and that Pedro's statement to Peacock on November 9, 2009, should be suppressed as a result of the violation, resulting in setting aside count four. The court tentatively denied Pedro's requests for damages and civil penalties.

The tentative decision also stated that the chief of police had exclusive authority to bring or dismiss charges against Pedro, while the Board of Rights had exclusive authority to adjudicate those charges, including the determination whether the limitations period had run. It stated that Beck had no authority to direct the board to find that counts one, two, and three were not barred by the statute of limitations and that the board had improperly acceded to such direction by "decid[ing] Pedro's guilt on all four charges even though it believed that the statute of limitations had passed on Counts 1-3." The trial court stated, however, that because it was ruling de novo on whether the statute of limitations had run on each count the error by the police chief and the board was moot.

The tentative decision stated further that the trial court believed O'Brien's account regarding Pedro's use of profanity and disbelieved Pedro's testimony regarding

11

the language used. The court tentatively concluded that Pedro's use of profanity was inappropriate and discourteous, and found Pedro guilty on count three.

Thus, the trial court tentatively found that the findings of guilt on counts one and four must be set aside. The court tentatively concluded that the 22-day suspension was excessive and that the matter should be remanded to the Board of Rights to determine an appropriate penalty based on the findings of guilt on counts two and three alone.

5. *Hearing on the Petition*

Pedro's counsel argued at the hearing on the petition that the Board of Rights had found that counts two and three (and others) were barred by the statute of limitations and that Beck had no authority to override the board's finding on that issue. Counsel argued that the board's finding was binding, that the city and Beck had failed to challenge the finding by filing a writ petition, and that the board's decision therefore was final. The trial court agreed and stated that Pedro was entitled to judgment in his favor on counts two and three and that his suspension therefore must be set aside.

Counsel for the City argued that Beck had merely declined to withdraw charges on counts two and three and did not direct the Board of Rights to find that those counts were timely. Counsel also argued that the board's imposition of a penalty indicated that it had reconsidered its finding and ultimately decided that those counts were timely. The trial court rejected this argument.

The trial court stated at the hearing, "So, as modified orally, the tentative is adopted as the order of the court."

12

6.    *Judgment and Appeal*

The trial court entered a judgment on March 27, 2013, granting Pedro's writ petition. The judgment states, "The Court's Decision was as stated in its Tentative Decision on Petition for Writ of Mandate with the exception of modifications made at oral argument on March 5, 2013." The judgment grants a peremptory writ of mandate setting aside the guilty findings on all four counts and the suspension, and awarding Pedro back pay.

The City timely appealed the judgment.

### CONTENTIONS

The City contends (1) counts two and three are not barred by the statute of limitations, and Beck had the authority to decide whether those counts were barred; (2) the trial court erroneously concluded that the limitations period began to run on count four when a supervisor reasonably should have discovered the allegation of misconduct, rather than when he or she actually discovered the allegation; and (3) Peacock's encounter with Pedro did not involve an interrogation and involved only routine contact, so the court erred by suppressing Pedro's statement, and in any event it should have been allowed to introduce the statement for purposes of impeachment.[1]

---

[1]    The City does not challenge the trial court's decision on count one.

13

## DISCUSSION

1. *Standard of Review*

Code of Civil Procedure section 1094.5 governs judicial review of a final decision by an administrative agency if the law required a hearing, the taking of evidence, and the discretionary determination of facts by the agency. (*Id.*, subd. (a).) The petitioner must show that the agency acted without or in excess of jurisdiction, did not afford a fair trial, or prejudicially abused its discretion. (*Id.*, subd. (b).) An abuse of discretion is shown if the agency did not proceed in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence. (*Ibid.*)

"[I]n cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) A trial court exercising its independent judgment must afford a strong presumption of correctness to the administrative findings. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) On appeal, we review the trial court's factual findings under the substantial evidence test if the trial court exercised its independent judgment. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.)

Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most

14

favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. The evidence is sufficient to support a factual finding only if an examination of the entire record viewed in this light discloses substantial evidence to support the finding. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; *Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223.)

An appellate court independently determines whether the agency prejudicially abused its discretion by failing to proceed in the manner required by law, such as by failing to comply with required procedures, applying an incorrect legal standard, or committing some other error of law. (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 479; *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 355.)

2.  *The Board of Rights Failed to Proceed in the Manner Required by Law*

Los Angeles City Charter section 1070(a) generally provides for a hearing before an administrative tribunal known as a Board of Rights before the imposition of discipline against a police officer. When the chief of police files a verified complaint containing charges against an officer, the officer may apply for a hearing before a Board of Rights. (*Id.*, § 1070(d), (f).) "A Board of Rights hearing is considered a de novo hearing." (*Id.*, § 1070(f).) The police department, represented by an advocate, has the burden of proving each charge by a preponderance of the evidence. (*Id.*, § 1070(l).) At the conclusion of the hearing, the board must make findings of guilty or not guilty based only on the evidence presented at the hearing. (*Id.*, § 1070(n), (x).)

15

The Board of Rights must prescribe a penalty if it finds an officer guilty. (L.A. Charter, § 1070(n).) The chief of police may either adopt the penalty prescribed by the board or impose a lesser penalty, but may not impose a greater penalty. (*Id.*, § 1070(p); *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 317, 319, fn. 3 (*Mays*).) The penalty prescribed by the board is considered a "recommendation" in this regard. (L.A. Charter, § 1070(p).) Thus, the chief of police has limited discretion with respect to the penalty, but otherwise must abide by the board's decision.

Section 398 of the Board of Rights Manual, *supra*, states: "A Board of Rights, when it is duly constituted and proceeds under the authority vested in it and in the manner required of it by section 1070 of the Charter of the City of Los Angeles, has the essential attributes of and acts as a quasi-judicial body. As such, it is empowered to make a final adjudication of fact in connection with facts properly submitted to it."

Thus, the chief of police makes charges and the Board of Rights adjudicates them. Both the city charter and the Board of Rights Manual indicate that the board makes the final administrative decision. We conclude that the board's responsibility to the adjudicate charges includes deciding whether the statute of limitations has run.

Section 260.60 of the Board of Rights Manual, *supra*, is not to the contrary. Section 260.60 states that upon determining that a charge is outside the applicable limitations period, the board must so inform the chief of police and must send the chief a proposed amended complaint omitting such charge. This allows the chief of police effectively to dismiss the charge. Section 260.60, however, neither authorizes the chief of police to overrule the board's decision regarding the statute of limitations nor relieves

16

the board of the responsibility of rendering a final administrative decision adjudicating the statute of limitations issue, exercising its independent judgment, in the event that the chief of police fails to dismiss the charge.

The Board of Rights adjudicated the merits of counts one, two, and three despite its findings that the limitations period had expired. The record shows that rather than render a decision consistent with its findings, which the board had reaffirmed on reconsideration, the board yielded to the determination by the chief of police that the limitations period had not expired and followed his direction to adjudicate the charges on their merits. We conclude that the board failed to proceed in the manner required by law by yielding to the chief of police rather than exercising its independent judgment. We also conclude that the board's guilty findings on counts one, two, and three are not supported by its findings that the statute of limitations had run on those counts. We therefore conclude that the board abused its discretion and that the guilty findings on those counts are invalid.

The trial court concluded that the board's decision that counts two and three were barred by the statute of limitations period was final and binding. The court concluded in effect that such determination was the final administrative decision despite the board's later guilty findings on those same counts. We conclude to the contrary that the guilty findings rendered at the conclusion of the proceedings constituted the final administrative decision. The City had no reason to file a writ petition challenging that decision. Although we conclude that the guilty findings on counts two and three are

17

invalid, we cannot affirm the judgment in favor of Pedro on those counts based on the City's failure to file a writ petition challenging the board's decision.

3.   *Counts Two and Three Are Barred by the Statute of Limitations*

a.   *Government Code Section 3304, Subdivision (d)(1)*

Government Code section 3304, subdivision (d)(1), part of the Public Safety Officers Procedural Bill of Rights Act (*id.*, § 3300 et seq.), establishes a one-year limitation on investigations of officer misconduct.  (*Mays*, *supra*, 43 Cal.4th at pp. 321, 324.)  Within the one–year period, a public agency must complete its investigation and notify the public safety officer that discipline may be taken.  (*Id.* at pp. 321-322, 325.)  The one–year period begins to run upon the discovery by a person authorized to initiate an investigation of an allegation of misconduct.  (Gov. Code, § 3304, subd. (d)(1).)  Section 3304, subdivision (d)(1) states:

"Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct.  This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998.  In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year, except as provided in

18

paragraph (2). The public agency shall not be required to impose the discipline within that one-year period."[2]

        b.     *Ignorance of the Accused Officer's Identity Does Not Postpone the Commencement of the Limitations Period*

Counts two and three relate to conduct that occurred on November 30, 2009. The police department became aware of the alleged acts of misconduct occurring on that date upon receipt of O'Brien's letter on December 3, 2009. The letter referred to an officer who was at the clinic on both November 9 and 30, 2009. The police department already knew from Peacock's report that Pedro was the officer who was at the clinic on November 9, although there was no single person authorized to initiate an investigation who actually put those facts together at the time. The police department and persons authorized to initiate an investigation (whom counsel call "supervisors") were aware of the allegations of misconduct on or before December 20, 2009, but there is no evidence that any supervisor actually identified Pedro as the accused officer by that date. Pedro was served with an administrative complaint on December 20, 2010.

The parties dispute whether, under Government Code section 3304, subdivision (d)(1), a person authorized to initiate an investigation must know or suspect the identity of the officer who allegedly committed the misconduct before the limitations period begins to run. We conclude that ignorance of the identity of the accused officer does not delay the commencement of the limitations period.

---

[2]    The exceptions stated in Government Code section 3304, subdivision (d)(2) are inapplicable and are not in dispute.

19

A limitations period begins to run when the cause of action accrues. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) The traditional common law rule is that a cause of action accrues at the time when the cause of action " ' "is complete with all of its elements." ' " (*Aryeh*, *supra*, at p. 1191; accord, *Fox*, *supra*, at p. 806.) The term "elements" in this context refers not to the specific legal elements of a cause of action, but more generally to wrongdoing, causation, and harm. (*Aryeh*, *supra*, at p. 1193; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).) The discovery rule is an exception to the traditional common law rule. Under the discovery rule, the accrual of a cause of action is delayed "until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart*, *supra*, at p. 397.)

The general rule is that the plaintiff's ignorance of the identity of a wrongdoer does not delay the accrual of a cause of action. (*Fox*, *supra*, 35 Cal.4th at p. 807; *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932.) This is because the identity of the wrongdoer is not an element of the cause of action. (*Fox*, *supra*, at p. 807 ["the identity of the defendant is not an element of the cause of action"]; *Norgart*, *supra*, 21 Cal.4th at p. 399 ["the identity of the defendant is not an element of any cause or action"].) The California Supreme Court in *Bernson* explained that this rule also is based on the assumption that the applicable limitations period normally affords sufficient time for a plaintiff who is aware of the injury to identify all of the wrongdoers. (*Bernson*, *supra*, at p. 932.)

The one-year period under Government Code section 3304, subdivision (d)(1) begins to run upon the discovery by a person authorized to initiate an investigation of an allegation of misconduct. The statute does not state or suggest that the defendant's identity must be known or suspected for the limitations period to commence. The statute contemplates an investigation taking place for up to one year after the discovery of the alleged misconduct before an officer is notified that discipline may be imposed. (*Mays*, *supra*, 43 Cal.4th at p. 321.) We conclude that the general rule that the plaintiff's ignorance of the identity of the wrongdoer does not delay the accrual of the cause of action applies and that the limitations period began to run on counts two and three when a person authorized to initiate an investigation first became aware of an allegation of misconduct. That occurred no later than December 16, 2009, when O'Brien's allegations of misconduct were assigned to a lieutenant in Hollenbeck Area. We therefore conclude that the administrative complaint served on December 20, 2010, was untimely. The judgment in favor of Pedro on counts two and three therefore is proper.

4.      *Count Four Is Barred by the Statute of Limitations*

a.      *The Discovery Rule Applies*

The trial court found that the limitations period began to run on count four on November 9, 2009, because Peacock was obligated to investigate O'Brien's allegation with reasonable diligence, but failed to do so. Thus, the court applied the discovery rule and found that in the exercise of reasonable diligence Peacock should have discovered on November 9, 2009, that Pedro's statement that he was dropping off a victim was

21

false.  The City contends the discovery rule is inapplicable.  We reject the City's contention.

The discovery rule, where it is applicable, modifies the traditional common law rule that a cause of action accrues when it is complete with all of its elements by postponing accrual until the plaintiff discovers or reasonably should discover the cause of action.  (*Norgart*, *supra*, 21 Cal.4th at p. 397.)  The discovery rule "may be expressed by the Legislature or implied by the courts."  (*Ibid.*)

A plaintiff discovers a cause of action when he or she actually knows or suspects a factual basis for its elements.  (*Norgart*, *supra*, 21 Cal.4th at p. 397.)  A plaintiff reasonably should discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements."  (*Id.* at p. 398; accord, *Fox*, *supra*, 35 Cal.4th at p. 807.)  A plaintiff has reason to suspect when he or she knows or has notice of circumstances that would cause a reasonable person to investigate.  (*Norgart*, *supra*, at p. 398.)  The discovery rule charges a plaintiff with presumptive knowledge of information that would have been revealed if he or she had conducted a reasonable investigation after becoming aware of or suspecting an injury caused by wrongdoing.  (*Fox*, *supra*, at pp. 807-808.)

"The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.  The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] *on inquiry*' " ' or if they have ' " '*the opportunity to obtain knowledge* from sources open to [their] investigation.' " '

22

[Citation.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox*, *supra*, 35 Cal.4th at pp. 807-808, fn. omitted.)

Some statutes expressly state that an action must be commenced within a certain period of time after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts essential to the cause of action. (E.g., Code Civ. Proc., §§ 340.1, subd. (a) [childhood sexual abuse]; 340.15, subd. (a)(2) [domestic violence]; 340.2, subd. (a) [exposure to asbestos]; 340.5 [medical malpractice], 340.6, subd. (a) [legal malpractice]; 340.8, subd. (a) [exposure to a hazardous material or toxic substance].) Other statutes state that an action must be commenced within a certain period of time after the "discovery" of facts without expressly stating that the plaintiff has a duty of inquiry. (E.g., *id.*, § 338, subd. (d); Corp. Code, §§ 25506, 25507, subd. (a); Gov. Code, § 12654, subd. (a); Ins. Code, § 1871.7, subd. (l)(1).)

The California Supreme Court has long held that the limitations period under Code of Civil Procedure section 338, subdivision (d) (formerly subd. 4) commences when the plaintiff discovers or reasonably should have discovered the facts constituting the fraud. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 (*Miller*); *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 (*Hobart*).) A plaintiff who acquires knowledge of facts that would cause a reasonable person to suspect fraud has a duty to investigate and is charged with knowledge of facts that would have been revealed by a reasonable investigation. (*Fox*, *supra*, 35 Cal.4th at p. 808; *Miller*, *supra*, at p. 875;

23

*Hobart*, *supra*, at p. 437.)  The word "discovery" as used in Code of Civil Procedure section 338, subdivision (d) "is not synonymous with actual knowledge."  (*People v. Zamora* (1976) 18 Cal.3d 538, 561-562.)

The Court of Appeal in *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 950 (*Debro*), explained that if the term "discovery" as used in Code of Civil Procedure section 338, subdivision (d) were construed literally so as to require the plaintiff's awareness of each fact necessary for a fraud cause of action before the limitations period commences, a plaintiff could unduly delay filing litigation by claiming ignorance of the facts.  So rather than construe the term "discovery" literally, the courts have construed that term in section 338, subdivision (d) to mean the date that the plaintiff actually discovered the facts or through the exercise of reasonable diligence should have discovered the facts, consistent with the discovery rule.  (*Miller*, *supra*, 33 Cal.3d at p. 875; *Hobart*, *supra*, 26 Cal.2d at p. 437.)

The Courts of Appeal have construed the term "discovery" in other statutes of limitation in a similar manner.  (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 417 [Ins. Code, § 1871.7, subd. (l)(1)]; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 423 [Corp. Code, § 25506]; *Debro*, *supra*, 92 Cal.App.4th at p. 953 [Gov. Code, § 12654, subd. (a)]; but see *Eisenbaum v. Western Energy Resources, Inc.* (1990) 218 Cal.App.3d 314, 325-326 [construed "discovery" in Corp. Code, § 25507, subd. (a) as requiring "actual knowledge"].)  This is consistent with the rule stated in *People v. Lopez* (2003) 31 Cal.4th 1051, 1060, that when statutory language has been judicially construed and

24

the Legislature subsequently uses the same language in another statute on a similar subject, the courts presume that the Legislature intended the language to have the same meaning. (*Deveny*, *supra*, at pp. 422-423 [citing *Lopez*]; *Debro*, *supra*, at p. 953 [stating the same rule].)

Government Code section 3304, subdivision (d)(1), including the operative language, was originally enacted in 1997 as subdivision (c). (Stats. 1997, ch. 148, § 1, p. 749.) This was long after the California Supreme Court had definitively construed the term "discovery" in Code of Civil Procedure section 338, subdivision (d) as encompassing the discovery rule and not synonymous with actual knowledge. Consistent with the judicial construction of the term "discovery" in section 338, subdivision (d), we conclude that the same term in Government Code section 3304, subdivision (d)(1) has the same meaning. We therefore hold that the one-year limitations period under Government Code section 3304, subdivision (d)(1) begins to run when a person authorized to initiate an investigation discovers, or through the use of reasonable diligence should have discovered, the allegation of misconduct. (See *Haney v. City of Los Angele*s (2003) 109 Cal.App.4th 1, 8, 11.)

b. *Substantial Evidence Supports the Trial Court's Finding*

The date that a person in the exercise of reasonable diligence should have discovered the facts is a question of fact. (*Fox*, *supra*, 35 Cal.4th at p. 810; *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 61) We review the trial court's finding under the substantial evidence test.

The evidence shows that on November 9, 2009, Peacock could have inquired at the clinic and could have asked his watch commander whether the clinic was a facility where the police took crime victims for treatment, and would have been told that the answer was no. He could have asked Pedro and others further questions to ascertain whether Pedro was conducting official business at the time, but instead relied on his brief conversation with Pedro and failed to learn the truth. Pedro testified at the Board of Rights hearing that if Peacock had informed him that Peacock had been sent to investigate a complaint he would have told Peacock the truth as to why he was there. We conclude that substantial evidence supports the trial court's finding that in the exercise of reasonable diligence Peacock should have discovered on November 9, 2009, that Pedro's alleged statement was false. The judgment in favor of Pedro on count four therefore is proper.[3]

---

[3]     In light of our conclusion, we need not address the City's third contention.

*DISPOSITION*

The judgment is affirmed.  Pedro is entitled to recover his costs on appeal.

***CERTIFIED FOR PUBLICATION***

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

27