Filed 6/22/16  Retamoza v. City of Los Angeles CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ED RETAMOZA,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>CITY OF LOS ANGELES et al.,<br><br>　　　　Defendants and Respondents. | B262016<br><br>(Los Angeles County<br>Super. Ct. No. BS148063) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joanne O'Donnell, Judge.  Affirmed.

Law Offices of Michael A. Morguess and Michael A. Morguess for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Amy Jo Field, Assistant City Attorney, and Wendy Shapero, Deputy City Attorney for Defendants and Respondents.

Respondents City of Los Angeles and Chief of Police Charles Beck fired petitioner and appellant Ed Retamoza, an officer of the Los Angeles Police Department (the Department), for inappropriate behavior, after a hearing before the Board of Rights (the Board). Retamoza filed a petition for writ of mandamus, which was denied. He appeals. We affirm the judgment.

## BACKGROUND

### I.      Retamoza engages in inappropriate conduct.

In July 2011, Christina Johnson was a probationer patrol officer at the Olympic Division of the Department. Retamoza, a police officer for 19 years, was her training officer in July and August 2011. In September or October 2011, Retamoza commented on Johnson's physique, saying, " 'Are you losing weight? Don't lose that back end,' " and " 'Mmm, I like that back end.' " Although these comments made Johnson uncomfortable, she didn't tell anyone about them. Ten or more times, Retamoza took photos of Johnson working and texted them to her, although Johnson asked him to stop.

In November 2011, Retamoza grabbed Johnson's firearm on several occasions. When Johnson remonstrated him, Retamoza told her she needed a " 'thick skin for this job.' " Johnson asked her assigned officer, Officer Susan Garcia, to keep Retamoza away from her, because he "creeps me out."

On November 23, 2011, Johnson was taking an on-line sexual harassment class. Retamoza and Garcia were present. Retamoza called Johnson over and showed her "video porn" of a "female masturbating" on his cell phone. When Johnson told him this was unacceptable and offensive, he laughed and said, " 'Oh, Johnson, you're the only [probationer I] I can trust, you have to have thick skin for this job.' " Johnson told Garcia that Retamoza showed her porn. Garcia confirmed parts of Johnson's testimony. Garcia heard Retamoza "say something to the effect of '[you're] the only probationer I can trust,' " and she saw Retamoza show something on his phone to Johnson, who looked uncomfortable. When Johnson left the room, Garcia told Retamoza that his behavior was unacceptable and to stay away from Johnson.

2

Sometime after the incident in the sexual harassment class, Retamoza grabbed Johnson's handcuff case, shook it and said, " 'Mmm, I like the way it shakes.' "

In December 2011 or January 2012, Retamoza responded to Johnson's and her partner's, Officer Tracy Wolfe, request for a Spanish speaker. While Johnson was filling out paperwork, Retamoza took photos of her. Wolfe told Retamoza to " 'knock it off. Leave my PI alone.' " Later, Retamoza sent the photo to Johnson, who showed it to Wolfe. Wolfe corroborated parts of Johnson's story, i.e., that Retamoza put his arm around Johnson and took a photo of the two of them, and that Wolfe told Retamoza to get his arm off of Johnson.

After Johnson completed her probationary period, she was talking to Officer Young Bin Cho when Retamoza walked by and asked if they were both " 'PII's now.' " Retamoza shook Cho's hand but ignored Johnson's outstretched hand, hugging her instead. Cho testified and corroborated Johnson's testimony.

Retamoza testified. He denied having porn on his phone. Rather, somebody passed a phone to him with a "nude photo of a person." He immediately passed it back.

## II.     Retamoza's hearing before the Board.

A complaint charged Retamoza with count 1, engaging in inappropriate behavior, count 2, giving a misleading statement during an internal affairs interview, and count 3, providing a false statement during an internal affairs interview.[1] The Board held a hearing on August 26, September 16, and October 2, 2013. At the conclusion of testimony on October 2, the Board, "in its attempts to deliberate this and find the facts in the case," "found that we require additional information to render an appropriate finding." The Board therefore asked the Department to conduct follow-up investigations of Retamoza's partner, officers working during the sexual harassment training, and Officer Jose Antillion. The Board explained that "given the gravity of the charges against Officer Retamoza and the potential consequences to him, we feel that we need

---

[1]     We do not detail the allegations underlying counts 2 and 3, because Retamoza was found not guilty of those counts.

this to render a finding in good conscience . . . [and] to accurately render a finding in this Board." Retamoza's counsel said he "believe[d] to 1,000 percent the Board is making this request only in good faith with its duty to find the truth," but objected on the sole ground that Retamoza, while the matter was pending, was not getting paid. Counsel therefore asked the Department to restore Retamoza to a nonfield assignment pending a decision.

The hearing before the Board reconvened on December 17, 2013. Sergeant Ricardo Ortega testified that he interviewed the Olympic Division Patrol and all employees working the day watch on November 23, 2011, but only Officer Raymond Guillen provided additional information. Guillen saw Retamoza show his phone to Johnson, but Guillen could provide no other details.

On December 18, 2013, the Board found Retamoza guilty of only count 1, engaging in inappropriate behavior toward Johnson by displaying a pornographic video to her.[2] Given "the nature of [Retamoza's] acts and the Department stance of zero tolerance for sexual harassment," the Board recommended that Retamoza be terminated. The Chief adopted the recommendation.[3]

### III. Retamoza files a petition for peremptory writ of mandate.

On April 10, 2014, Retamoza filed, under Code of Civil Procedure section 1094.5, a petition for peremptory writ of mandate, which raised two arguments: insufficiency of the evidence and abuse of discretion. The City and Chief Beck opposed the petition.

The trial court denied the petition. Exercising its independent judgment, the court rejected Retamoza's argument that the evidence did not support the Board's findings. The court specifically rejected the notion that the Board's request for further investigation constituted an admission that the weight of the evidence did not support its culpability

---

[2]     The Board found that any demeaning comments Retamoza made to Johnson, grabbing her gun, giving her an unwanted hug, and taking unwanted photographs did not warrant a guilty finding on count 1.

[3]     The order adopting the recommendation is not in the record.

4

findings.  Although the Board did not explain its reasons for the further investigation, the "Board certainly did not state that it had 'insufficient evidence' to support a finding as to Count 1.  It is not unreasonable to infer that the Board believed that it had sufficient evidence to find [Retamoza] guilty of Count 1, but desired the Department to explore exculpatory evidence."  The court also noted that the further investigation presented a new fact:  Officer Guillen's corroborating testimony he saw Retamoza show his phone to Johnson during the sexual harassment training class.

The trial court next found that Retamoza's termination was not an abuse of discretion.  The court rejected the argument that the Board erroneously determined that Retamoza's conduct constituted sexual harassment.  Retamoza was neither charged with nor found guilty of sexual harassment.  He was charged with and found guilty of inappropriate conduct.  (L.A. Police Dept. (2005) vol. 1, Policy: Personal Conduct, § 210.35, p. 9.)  In any event, Retamoza's conduct *did* amount to sexual harassment.  Finally, the court rejected Retamoza's argument that the Board erroneously imposed a "zero tolerance" rule for sexual harassment:  "[N]othing in the Board's decision indicates that [Retamoza's] termination was compelled by the automatic application of a rule or regulation . . . .  The Board's rationale lays out compelling reasons for the termination penalty beyond the substance of his offending conduct, including:  (a) [Retamoza's] status as a supervisor interacting inappropriately with a probationer; (b) the fact that [he] acted in derogation of the very sexual harassment policies that were the subject of the training; and (c) [his] statements that he had previously been a victim of sexual harassment . . . , which suggested to the Board that he should have known better."

The trial court entered judgment.  Retamoza appealed.  On appeal, Retamoza abandons his sufficiency of the evidence argument.  He instead contends that the Board failed to comply with Los Angeles City Charter, article X, section 1070(n) (section 1070(n)), and the Board failed to exercise its discretion and to "consider legally relevant factors in rendering the level of discipline."

5

**DISCUSSION**

**I.      Standard of review.**

Code of Civil Procedure section 1094.5 governs judicial review of a final decision by an administrative agency if the law required a hearing, the taking of evidence, and the discretionary determination of facts by the agency.  The petitioner must show that the agency acted without or in excess of jurisdiction, did not afford a fair trial, or prejudicially abused its discretion.  (*Id.*, subd. (b).)  An agency abuses its discretion if it did not proceed in the manner required by law, its decision is not supported by the findings, or its findings are not supported by the evidence.  (*Ibid.*)

We independently determine whether the agency prejudicially abused its discretion by failing to proceed in the manner required by law, such as by failing to comply with required procedures, applying an incorrect legal standard, or committing some other error of law.  (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 479; *City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 355; *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.)

**II.      The Board did not proceed in a manner contrary to the City Charter.**

Los Angeles City Charter, article X, section 1070(a) generally provides for a hearing before the Board before the imposition of discipline against a police officer.  (*Pedro v. City of Los Angeles, supra,* 229 Cal.App.4th at pp. 99-100.)  The police department, represented by an advocate, has the burden of proving each charge by a preponderance of the evidence.  (L.A. City Charter, § 1070(l).)  At the conclusion of the hearing, the Board must make findings of guilty or not guilty based only on the evidence presented at the hearing.  (L.A. City Charter, § 1070(n) & (x).)  Section 1070(n) thus provides:  "**Finding and Decision**.  The Board of Rights shall at the conclusion of the hearing make findings of guilty or not guilty on each charge, which findings shall be based only upon the evidence presented at the hearing."

Based on section 1070(n), Retamoza contends that the "conclusion of the hearing" occurred on October 2, 2013, when the parties had presented their evidence and the Department submitted the case to the Board for its consideration. At that time, Retamoza argues, the Department was obligated to render its decision. The first problem with this argument is that, until this appeal, Retamoza never objected under section 1070(n). Instead, on October 2, 2013, the parties rested and submitted the case to the Board for its review. The Board convened for the day. The next day, October 3, the Board said that "in its attempts to deliberate this and find the facts in the case, [the Board] has found that we require additional information to render an appropriate finding . . . ." The Board then specified additional areas for the Department to investigate. Retamoza's sole objection was on the ground he wanted to be reinstated in a nonfield capacity during any continuance. But he agreed that the Board's request was otherwise "laudable" and that the additional information the Board wanted and the procedure for conveying the results of the further investigation "ma[de] sense," so long as he had time to prepare any additional defense. Thus, having failed to object under section 1070(n), and, moreover, having *agreed* to the procedure, Retamoza's contention that the Board acted in contravention of section 1070(n) is forfeited. Retamoza further forfeited the contention by failing to raise it in his petition in the trial court. (See generally *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399 [reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court]; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.)

Retamoza counters that he did raise this specific objection, at the Board hearing and in the trial court. At the hearing before the Board, he pointed out that the Department had the "burden to present the facts. If they failed to do so, then the inferences are against the Department." But a fair reading of the record shows that this statement was made in the context of Retamoza's request to be reinstated with pay during any continuance. Retamoza's observation that the Department had the burden of proof was simply that, an observation. It was not an objection that a continuance of the hearing for

7

further investigation violated the City Charter. Nor was the section 1070(n) issue before the trial court. Rather, Retamoza cited the Board's request for additional information as indicative of insufficiency of the evidence. He did not argue that the request violated the City Charter.

Even if the issue was preserved for review, we would disagree that the Board's procedure either violated section 1070(n) or exceeded its adjudicatory authority. Retamoza cites nothing in the Charter precluding the Board from requesting additional information before issuing its decision. To the contrary, the Board's request for additional information furthered Retamoza's right not to be disciplined "except for good and sufficient cause shown upon a finding of guilty of the specific charge or charges assigned as cause or causes *after a full, fair, and impartial hearing* before a Board of Rights." (L.A. City Charter, art. X, § 1070(a), italics added; see *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1235-1237 [board's failure to collect information necessary to evaluate a project's environmental impact was prejudicial error].) Retamoza's reading of section 1070(n) is also strained. The hearing did not "conclude" on October 2, 2013. Rather, the Board asked for additional information and continued the hearing to December, at which time additional evidence was given, the hearing concluded, and the Board rendered its decision.

Finally, we need not decide whether the Board is solely an adjudicatory body or whether it also has investigatory powers, because the Board's mere request for additional information did not transform it into an investigatory body. The Department, not the Board, conducted the investigation and interviewed witnesses. There was no improper combination of investigatory and adjudicatory functions in the Board.

## III. The Board did not abuse its discretion by failing to consider legally relevant factors.

We reject Retamoza's next contention, that his termination was an abuse of discretion because it was premised on a zero tolerance rule for sexual harassment, which he did not commit, rather than on the factors in *Skelly v. State Personnel Bd.* (1975)

15 Cal.3d 194, 217. Under *Skelly*, an administrative body has broad discretion to impose a penalty or discipline. (*Ibid.*) In considering whether an abuse of discretion occurred, the overriding consideration is whether the employee's conduct resulted in or is likely to result in harm to the public service. (*Id.* at p. 218.) Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. (*Ibid.*)

The Board considered these factors.[4] In reaching its decision, the Board found the nature of the misconduct particularly "disconcerting" because Retamoza was a training officer "entrusted with training young impressionable officers." The circumstances surrounding the misconduct were "disturbing," because Retamoza showed the pornographic video *during* training about the inappropriateness of such behavior. The Board was "bothered" by Retamoza's statements he too had once been a victim of sexual harassment; thus, he "should have known from [his] own experience that displaying a pornographic video is detrimental to the workplace and a violation of department policy." And, when the Board noted that "[t]he basic act of our department is respect for others which goes hand and hand with the City and the Department's policy of zero tolerance for sexual harassment," it was clearly considering the harm to public service.

Also, we reject Retamoza's argument he was fired for sexual harassment. He was charged with and found guilty of inappropriate behavior, not sexual harassment. (See generally L.A. Police Dept., *supra*, vol. 1, Policy: Personal Conduct, § 210.35, p. 9.)[5]

---

[4] The Board also reviewed Retamoza's "package," discipline history, and commendations.

[5] "**CONDUCT UNBECOMING AN OFFICER**. A police officer is the most conspicuous representative of the government, and to the majority of the people, the officer is a symbol of stability and authority upon whom they can rely. An officer's conduct is closely scrutinized, and when the officer's actions are found to be excessive, unwarranted, or unjustified, they are criticized far more severely than comparable conduct of persons in other walks of life. Since the conduct of officers, on- or off-duty, may reflect directly upon the Department, officers must at all times conduct themselves in a manner which does not bring discredit to themselves, the Department, or the City."

Retamoza makes no argument that the Board abused its discretion based on the conclusion it in fact reached; i.e., he engaged in inappropriate behavior by showing Johnson pornography.

## DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

10